# HENRY *v.* MISSISSIPPI.

No. 6.   Argued October 13, 1964.—
Decided January 18, 1965.

*Barbara A. Morris* argued the cause for petitioner.
With her on the brief were *Robert L. Carter, Jack H.
Young, R. Jess Brown, Jr.,* and *Alvin K. Hellerstein.*

*G. Garland Lyell, Jr.,* Assistant Attorney General of Mississippi, argued the cause for respondent. With him on the brief was *Joe T. Patterson,* Attorney General of Mississippi.

Mr. Justice Brennan delivered the opinion of the Court.

Petitioner was convicted of disturbing the peace, by indecent proposals to and offensive contact with an 18-year-old hitchhiker to whom he is said to have given a ride in his car. The trial judge charged the jury that "you cannot find the defendant guilty on the unsupported and uncorroborated testimony of the complainant alone." The petitioner's federal claim derives from the admission of a police officer's testimony, introduced to corroborate the hitchhiker's testimony. The Mississippi Supreme Court held that the officer's testimony was improperly admitted as the fruit of "an unlawful search and was in violation of § 23, Miss. Constitution 1890." 154 So. 2d 289, 294.[1] The tainted evidence tended to substantiate the hitchhiker's testimony by showing its accuracy in a detail which could have been seen only by one inside the car. In particular, it showed that the right-hand ashtray of the car in which the incident took place was full of Dentyne chewing gum wrappers, and that the cigarette lighter did not function. The police officer testified that after petitioner's arrest he had returned to the petitioner's home and obtained the permission of peti-

---

[1] The Mississippi Supreme Court wrote two opinions. The first is reported in the July 11, 1963, issue of the Southern Reporter advance sheets, 154 So. 2d 289. This was withdrawn when the court filed the second opinion, which appears at the same page in the bound volume of the Southern Reporter. Citations hereinafter will designate the bound volume or the advance sheet if the cited material appears in only one opinion. The material referred to at this point in the text appears in both opinions.

tioner's wife to look in petitioner's car. The wife provided the officer with the keys, with which the officer opened the car. He testified that he tried the lighter and it would not work, and also that the ashtray "was filled with red dentyne chewing gum wrappers."

The Mississippi Supreme Court first filed an opinion which reversed petitioner's conviction and remanded for a new trial. The court held that the wife's consent to the search of the car did not waive petitioner's constitutional rights, and noted that the "[t]estimony of the State's witness . . . is, in effect, uncorroborated without the evidence disclosed by the inspection of defendant's automobile." 154 So. 2d, at 296 (advance sheet).[2] Acting in the belief that petitioner had been represented by nonresident counsel unfamiliar with local procedure, the court reversed despite petitioner's failure to comply with the Mississippi requirement that an objection to illegal evidence be made at the time it is introduced. The court noted that petitioner had moved for a directed verdict at the close of the State's case, assigning as one ground the use of illegally obtained evidence; it did not mention petitioner's renewal of his motion at the close of all evidence.

After the first opinion was handed down, the State filed a Suggestion of Error, pointing out that petitioner was in fact represented at his trial by competent local counsel, as well as by out-of-state lawyers. Thereupon the Mississippi Supreme Court withdrew its first opinion and filed a new opinion in support of a judgment

---

[2] The complaining witness also testified as to the last four digits of petitioner's license plate, and to the fact that the first three digits were obscured; these facts were independently substantiated. Since the license plate could be seen from outside the car, and petitioner denied that the complaining witness had ever been in his car, the Mississippi Supreme Court apparently accepted the officer's testimony concerning the Dentyne wrappers and cigarette lighter as the only cogent corroborative evidence.

affirming petitioner's conviction. The new opinion is identical with the first save for the result, the statement that petitioner had local counsel, and the discussion of the effect of failure for whatever reason to make timely objection to the evidence. "In such circumstances, even if honest mistakes of counsel in respect to policy or strategy or otherwise occur, they are binding upon the client as a part of the hazards of courtroom battle." 154 So. 2d, at 296 (bound volume). Moreover, the court reasoned, petitioner's cross-examination of the State's witness before the initial motion for directed verdict, and introduction of other evidence of the car's interior appearance afterward, "cured" the original error and estopped petitioner from complaining of the tainted evidence. We granted certiorari, 376 U. S. 904. We vacate the judgment of conviction and remand for a hearing on the question whether the petitioner is to be deemed to have knowingly waived decision of his federal claim when timely objection was not made to the admission of the illegally seized evidence.

It is, of course, a familiar principle that this Court will decline to review state court judgments which rest on independent and adequate state grounds, even where those judgments also decide federal questions. The principle applies not only in cases involving state substantive grounds, *Murdock v. City of Memphis,* 20 Wall. 590, but also in cases involving state procedural grounds. Compare *Herb* v. *Pitcairn,* 324 U. S. 117, 125–126, with *Davis* v. *Wechsler,* 263 U. S. 22. But it is important to distinguish between state substantive grounds and state procedural grounds. Where the ground involved is substantive, the determination of the federal question cannot affect the disposition if the state court decision on the state law question is allowed to stand. Under the view taken in *Murdock* of the statutes conferring appellate jurisdiction

on this Court, we have no power to revise judgments on questions of state law. Thus, the adequate nonfederal ground doctrine is necessary to avoid advisory opinions.

These justifications have no application where the state ground is purely procedural. A procedural default which is held to bar challenge to a conviction in state courts, even on federal constitutional grounds, prevents implementation of the federal right. Accordingly, we have consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question. Cf. *Lovell* v. *City of Griffin,* 303 U. S. 444, 450. As Mr. Justice Holmes said:

> "When as here there is a plain assertion of federal rights in the lower court, local rules as to how far it shall be reviewed on appeal do not necessarily prevail. . . . Whether the right was denied or not given due recognition by the [state court] . . . is a question as to which the plaintiffs are entitled to invoke our judgment." *Love* v. *Griffith,* 266 U. S. 32, 33–34.

Only last Term, we reaffirmed this principle, holding that a state appellate court's refusal, on the ground of mootness, to consider a federal claim, did not preclude our independent determination of the question of mootness; that is itself a question of federal law which this Court must ultimately decide. *Liner* v. *Jafco, Inc.,* 375 U. S. 301. These cases settle the proposition that a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture serves such a state interest. If it does not, the

state procedural rule ought not be permitted to bar
vindication of important federal rights.[3]

The Mississippi rule requiring contemporaneous objec-
tion to the introduction of illegal evidence clearly does
serve a legitimate state interest. By immediately appris-
ing the trial judge of the objection, counsel gives the
court the opportunity to conduct the trial without using
the tainted evidence. If the objection is well taken the
fruits of the illegal search may be excluded from jury
consideration, and a reversal and new trial avoided. But
on the record before us it appears that this purpose of the
contemporaneous-objection rule may have been substan-
tially served by petitioner's motion at the close of the
State's evidence asking for a directed verdict because of
the erroneous admission of the officer's testimony. For
at this stage the trial judge could have called for elabora-
tion of the search and seizure argument and, if persuaded,
could have stricken the tainted testimony or have taken
other appropriate corrective action. For example, if
there was sufficient competent evidence without this testi-
mony to go to the jury, the motion for a directed verdict
might have been denied, and the case submitted to the
jury with a properly worded appropriate cautionary
instruction.[4] In these circumstances, the delay until the

---

[3] This will not lead inevitably to a plethora of attacks on the
application of state procedural rules; where the state rule is a reason-
able one and clearly announced to defendant and counsel, application
of the waiver doctrine will yield the same result as that of the
adequate nonfederal ground doctrine in the vast majority of cases.

[4] The view of the Mississippi court in its first opinion seems to
have been that there was insufficient evidence apart from the tainted
testimony to support the conviction. Hence, appropriate corrective
action as a matter of state law might have included granting peti-
tioner's motion. We have not overlooked the fact that the first
opinion remanded for a new trial, although the usual practice of the
Mississippi Supreme Court where a motion for directed verdict,
renewed at the close of all the evidence, is improperly denied is to

close of the State's case in presenting the objection cannot be said to have frustrated the State's interest in avoiding delay and waste of time in the disposition of the case. If this is so, and enforcement of the rule here would serve no substantial state interest, then settled principles would preclude treating the state ground as adequate; giving effect to the contemporaneous-objection rule for its own sake "would be to force resort to an arid ritual of meaningless form." Staub v. City of Baxley, 355 U. S. 313, 320; see also Wright v. Georgia, 373 U. S. 284, 289–291.[5]

We have no reason, however, to decide that question now or to express any view on the merits of petitioner's substantial constitutional claim.[6] For even assuming

dismiss the prosecution. See Lewis v. State, 198 Miss. 767, 23 So. 2d 401; Adams v. State, 202 Miss. 68, 30 So. 2d 593; Smith v. State, 205 Miss. 170, 38 So. 2d 698. The opinion offers no explanation of the mandate; the answer is probably that the court refers only to the motion at the end of the State's case, 154 So. 2d, at 294, 295, and overlooks the fact that it was renewed at the close of all the evidence, just as it overlooks the presence of local counsel. If the motion were not renewed, the appellate court could not dismiss the prosecution. See Smith v. State, supra.

[5] We do not rely on the principle that our review is not precluded when the state court has failed to exercise discretion to disregard the procedural default. See Williams v. Georgia, 349 U. S. 375. We read the second Mississippi Supreme Court opinion as holding that there is no such discretion where it appears that petitioner was represented by competent local counsel familiar with local procedure.

[6] Thus, consistently with the policy of avoiding premature decision on the merits of constitutional questions, we intimate no view whether the pertinent controlling federal standard governing the legality of a search or seizure, see Ker v. California, 374 U. S. 23, is the same as the Mississippi standard applied here, which holds that the wife's consent cannot validate a search as against her husband. Nor do we rule at this time on the question whether petitioner's cross-examination of the officer, before raising any objection, "cured" the effect of the inadmissible testimony; this Court has not yet ruled on the role of harmless error in search and seizure cases. Cf. Jackson v. Denno, 378 U. S. 368, 376. Of course, nothing occurring after the judge's refusal to honor petitioner's objection could have this curative effect.

that the making of the objection on the motion for a directed verdict satisfied the state interest served by the contemporaneous-objection rule, the record suggests a possibility that petitioner's counsel deliberately bypassed the opportunity to make timely objection in the state court, and thus that the petitioner should be deemed to have forfeited his state court remedies. Although the Mississippi Supreme Court characterized the failure to object as an "honest mistake," 154 So. 2d, at 296 (bound volume), the State, in the brief in support of its Suggestion of Error in the Supreme Court of Mississippi asserted its willingness to agree that its Suggestion of Error "should not be sustained if either of the three counsel [for petitioner] participating in this trial would respond hereto with an affidavit that he did not know that at some point in a trial in criminal court in Mississippi that an objection to such testimony must have been made." The second opinion of the Mississippi Supreme Court does not refer to the State's proposal and thus it appears that the Court did not believe that the issue was properly presented for decision. Another indication of possible waiver appears in an affidavit attached to the State's brief in this Court; there, the respondent asserted that one of petitioner's lawyers stood up as if to object to the officer's tainted testimony, and was pulled down by co-counsel. Again, this furnishes an insufficient basis for decision of the waiver questions at this time. But, together with the proposal in the Suggestion of Error, it is enough to justify an evidentiary hearing to determine whether petitioner "after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures . . . ." *Fay* v. *Noia,* 372 U. S. 391, 439.

The evidence suggests reasons for a strategic move. Both the complaining witness and the police officer testified that the cigarette lighter in the car did not work. After denial of its motion for a directed verdict the defense called a mechanic who had repaired the cigarette lighter. The defense might have planned to allow the complaining witness and the officer to testify that the cigarette lighter did not work, and then, if the motion for directed verdict were not granted, to discredit both witnesses by showing that it did work, thereby persuading the jury to acquit. Or, by delaying objection to the evidence, the defense might have hoped to invite error and lay the foundation for a subsequent reversal. If either reason motivated the action of petitioner's counsel, and their plans backfired, counsel's deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here.[7] Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see *Whitus* v. *Balkcom*, 333 F. 2d 496 (C. A. 5th Cir. 1964), we think that the deliberate bypassing by counsel of the contempora-

---

[7] The state court's holding that petitioner was estopped because his counsel brought up the question of the car's interior appearance on direct examination and cross-examination, see p. 446, *supra*, amounts to a holding that petitioner waived his federal right. In the absence of a showing that this was prompted by litigation strategy, the present record is insufficient to support such a holding. The cross-examination during the State's case, amounting to little more than a half-page in the printed record, adds little to petitioner's failure to make contemporaneous objection. The evidence brought in on direct examination was only after petitioner had moved for a directed verdict, pointing to the illegal evidence. This would scarcely support a finding of waiver.

neous-objection rule as a part of trial strategy would have that effect in this case.

Only evidence extrinsic to the record before us can establish the fact of waiver, and the State should have an opportunity to establish that fact. In comparable cases arising in federal courts we have vacated the judgments of conviction and remanded for a hearing, suspending the determination of the validity of the conviction pending the outcome of the hearing. See *United States v. Shotwell Mfg. Co.*, 355 U. S. 233; *Campbell v. United States*, 365 U. S. 85. We recently adopted a similar procedure to determine an issue essential to the fairness of a state conviction. See *Jackson v. Denno*, 378 U. S. 368, 393–394; *Boles v. Stevenson*, 379 U. S. 43. We think a similar course is particularly desirable here, since a dismissal on the basis of an adequate state ground would not end this case; petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim, at least unless it is shown that petitioner deliberately bypassed the orderly procedure of the state courts. *Fay v. Noia, supra*, at 438.

Of course, in so remanding we neither hold nor even remotely imply that the State must forgo insistence on its procedural requirements if it finds no waiver. Such a finding would only mean that petitioner could have a federal court apply settled principles to test the effectiveness of the procedural default to foreclose consideration of his constitutional claim. If it finds the procedural default ineffective, the federal court will itself decide the merits of his federal claim, at least so long as the state court does not wish to do so. By permitting the Mississippi courts to make an initial determination of waiver, we serve the causes of efficient administration of criminal justice, and of harmonious federal-state judicial relations. Such a disposition may make unnecessary the processing

of the case through federal courts already laboring under congested dockets,[8] or it may make unnecessary the relitigation in a federal forum of certain issues. See *Townsend* v. *Sain,* 372 U. S. 293, 312–319. The Court is not blind to the fact that the federal habeas corpus jurisdiction has been a source of irritation between the federal and state judiciaries. It has been suggested that this friction might be ameliorated if the States would look upon our decisions in *Fay* v. *Noia, supra,* and *Townsend* v. *Sain, supra,* as affording them an opportunity to provide state procedures, direct or collateral, for a full airing of federal claims.[9] That prospect is better served by a remand than by relegating petitioner to his federal habeas remedy. Therefore, the judgment is vacated and the case is remanded to the Mississippi Supreme Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK, dissenting.

Petitioner contends that his conviction was based in part on evidence obtained by an allegedly unlawful search in violation of the United States Constitution. I would decide this federal question here and now. I do not believe that the Mississippi procedural trial rule relied on by the State can shut off this Court's review, nor do I find a particle of support for the Court's suggestion that

---

[8] Habeas corpus petitions filed by state prisoners in federal district courts increased from 1,903 to 3,531, or 85.5%, from the 1963 to the 1964 fiscal year. Annual Report of the Director, Administrative Office of the United States Courts, p. 46 (1964); our own Miscellaneous Docket, where cases of state prisoners are primarily listed, continues to show substantial increases. The number has increased from 878 for the 1956 Term to 1,532 for the 1963 Term.

[9] See Meador, Accommodating State Criminal Procedure and Federal Postconviction Review, 50 A. B. A. J. 928 (October 1964). And see Brennan, Some Aspects of Federalism, 39 N. Y. U. L. Rev. 945, 957–959 (1964).

petitioner knowingly waived his right to have this constitutional question decided by the state trial court.

As far as the issue of waiver is concerned, I agree with the Mississippi Supreme Court, which considered the failure to object one of the "honest mistakes" which any lawyer might make,[1] since I believe that the record is completely barren of evidence to support a finding of a conscious and intentional waiver of petitioner's due process right to have the trial court decide whether evidence used against him had been unconstitutionally seized. Therefore I would not remand for a hearing by the State Supreme Court or the trial court on the issue of waiver.[2] And even if I considered that a real issue of waiver had been shown and was properly before us, I would decide it here. I cannot agree to the Court's judgment remanding the case to the state courts for a hearing on that issue alone, thereby giving the State a chance to supplement the trial record to save its conviction from constitutional challenge in a summary hearing before a court without a jury. This is the kind of piecemeal prosecution invented and used by this Court several years ago in *United States v. Shotwell Mfg. Co.*, 355 U. S. 233. I expressed my dissent from such an unjust, if not unconstitutional, fragmentizing technique in *Shotwell*, 355 U. S., at 246–252,

---

[1] 154 So. 2d 289, 296 (bound volume).

[2] I think that the very "evidence" cited in the Court's opinion points up the fact that there was no evidence from which it can be inferred that a conscious waiver was made. I can find no support, as the Court does, from an affidavit filed for the first time as an appendix to the State's brief in this Court, stating that the district attorney who tried the case had seen one of petitioner's counsel start to rise from his chair when the evidence from the search was introduced, but that another of petitioner's counsel gave a "jerk on the coat tail" of the lawyer, "returning him to his seat." It is hard for me to see how one could infer from this "jerk on the coat tail" even a suspicion that petitioner had consciously and knowingly waived his right to object to the evidence offered against him.

and again last year when the Court again applied it in . *Jackson* v. *Denno,* 378 U. S. 368, dissenting opinion at 401, 409–410.   See also *Boles* v. *Stevenson,* 379 U. S. 43, dissent noted at 46.   I have the same objections to *"Shotwell*ing" the present case.   And I do not think this dangerous *Shotwell*ing device should be expanded so that the State may invoke it merely by challenging petitioner's counsel here to deny knowledge of Mississippi's procedural rule.

Nor do I believe that Mississippi's procedural rule concerning the stage of a trial at which constitutional objections should be made is the kind of rule that we should accept as an independent, adequate ground for the State Supreme Court's refusal to decide the constitutional question raised by petitioner.   In *Williams* v. *Georgia,* 349 U. S. 375, this Court held that where a State allows constitutional questions "to be raised at a late stage and be determined by its courts as a matter of discretion, we are not concluded from assuming jurisdiction and deciding whether the state court action in the particular circumstances is, in effect, an avoidance of the federal right." [3]   No Mississippi court opinions or state statutes have been called to our attention that I read as denying *power* of the State Supreme Court, should that court wish to do so, to consider and determine constitutional questions presented at the time this one was.   In fact, as I understand counsel for the State, the Supreme Court of Mississippi does have power in its discretion to consider such questions regardless of when they are presented.[4] As that court has said most persuasively:

> "Constitutional rights in serious criminal cases rise above mere rules of procedure. . . .   Errors affect-

---

[3] 349 U. S., at 383 (footnote omitted).

[4] The attorneys for the State of Mississippi have no doubt that the State Supreme Court has this power.   When the case was argued

ing fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal." *Brooks* v. *State,* 209 Miss. 150, 155, 46 So. 2d 94, 97.

After stating this to be the rule it followed, and citing a number of its past decisions which stated and applied the same rule, the highest court of Mississippi, in the opinion quoted from, because of that rule reversed a conviction obtained through the use of unconstitutionally seized evidence, even though as in the present case there had been no objection made at the time the evidence was presented. The court noted that it had applied this same rule in other cases where proper objection had not been made at the trial, citing its holdings in *Fisher* v. *State,* 145 Miss. 116, 110 So. 361, and *Carter* v. *State,* 198 Miss. 523, 21 So. 2d 404. In all of those cases the defendant appears to have been represented by local counsel. Yet this Court now apparently holds that the state court may, if it chooses to do so, depart from its prior cases and apply a new, stricter rule against this defendant and thereby prevent this Court from reviewing the case to see that his federal constitutional rights were safeguarded. I do not believe the cherished federal constitutional right of a defendant to object to unconstitutionally seized evidence

---

before this Court, the following exchange took place between a Justice and counsel for the State:

"Q. Does that mean there is a discretion in the [state] court where it can waive [a failure to object] if it sees fit under the circumstances?

"A. It did so in that case I'm talking about [*Brooks* v. *State, infra* in text] where in several respects the defendant's rights were just completely trampled.

"Q. It means that it's not an absolutely rigid, unbreakable, irrevocable rule?

"A. That's right. That's right, your honor.

"Q. And that the court can waive it if the circumstances in its judgment justify?

"A. That's correct."

offered against him can be cut off irrevocably by state-court discretionary rulings which might be different in particular undefined circumstances in other cases. I think such a procedural device for shutting off our review of questions involving constitutional rights is too dangerous to be tolerated.

For these reasons I dissent from the disposition of this case.

MR. JUSTICE HARLAN, with whom MR. JUSTICE CLARK and MR. JUSTICE STEWART join, dissenting.

Flying banners of federalism, the Court's opinion actually raises storm signals of a most disquieting nature. While purporting to recognize the traditional principle that an adequate procedural, as well as substantive, state ground of decision bars direct review here of any federal claim asserted in the state litigation, the Court, unless I wholly misconceive what is lurking in today's opinion, portends a severe dilution, if not complete abolition, of the concept of "adequacy" as pertaining to state procedural grounds.

In making these preliminary observations I do not believe I am seeing ghosts. For I cannot account for the remand of this case in the face of what is a demonstrably adequate state procedural ground of decision by the Mississippi Supreme Court except as an early step toward extending in one way or another the doctrine of *Fay* v. *Noia*, 372 U. S. 391, to direct review. In that case, decided only two Terms ago, the Court turned its back on history (see dissenting opinion of this writer, at 448 *et seq.*), and did away with the adequate state ground doctrine in federal habeas corpus proceedings.

Believing that any step toward extending *Noia* to direct review should be flushed out and challenged at its earliest appearance in an opinion of this Court, I respectfully dissent.

## I.

The Mississippi Supreme Court did not base its ultimate decision upon petitioner's federal claim that his wife's consent could not validate an otherwise improper police search of. the family car, but on the procedural ground that petitioner (who was represented by three experienced lawyers) had not objected at the time the fruits of this search were received in evidence. This Court now strongly implies, but does not decide (in view of its remand on the "waiver" issue) that enforcement of the State's "contemporaneous-objection" rule was inadequate as a state ground of decision because the petitioner's motion for a directed verdict of acquittal afforded the trial judge a satisfactory opportunity to take "appropriate corrective action" with reference to the allegedly inadmissible evidence. Thus, it is suggested, this may be a situation where "giving effect to the contemporaneous-objection rule for its own sake 'would be to force resort to an arid ritual of meaningless form.' " (*Ante,* p. 449.) ·

From the standpoint of the realities of the courtroom, I can only regard the Court's analysis as little short of fanciful. The petitioner's motion for a verdict could have provoked one of three courses of action by the trial judge, none of which can reasonably be considered as depriving the State's contemporaneous-objection rule of its capacity to serve as an adequate state ground.

1. The trial judge might have granted the directed verdict. But had this action been appropriate, the Supreme Court of Mississippi, in its first opinion, would have ordered the prosecution dismissed. Since it did not, and the matter is entirely one of state law, further speculation by this Court should be foreclosed.[1]

---

[1] The court, as a matter of state law, could have found (a) that there was sufficient corroborative evidence, (b) that none was necessary; or (c) that retrial was necessary to prevent defendants in crim-

2. The trial judge might have directed a mistrial. The State's interest in preventing mistrials through the contemporaneous-objection requirement is obvious.

3. The remaining course of action is the example given by the Court; the trial judge could have denied the motion for a directed verdict, but, *sua sponte*, called for elaboration of the argument, determined that the search of the automobile was unconstitutional, and given cautionary instructions to the jury to disregard the inadmissible evidence when the case was submitted to it.

The practical difficulties with this approach are manifestly sufficient to show a substantial state interest in their avoidance, and thus to show an "adequate" basis for the State's adherence to the contemporaneous-objection rule. To make my point I must quote the motion for directed verdict in full.

"Atty Carter: We're going to make a motion, your Honor, for a directed verdict in this case. We are going to base our motion on several grounds. First, we think that this whole process by which this defendant was brought or attempted to be brought into the jurisdiction of this Court is illegal and void. There is nothing in the record in this case to show that the warrant that was issued against this defendant was based upon—it must be based in this State and any other State on an affidavit, on a proper affidavit or a proper complaint by any party. True, there is some testimony that some affidavit was made, and the complaining witness said so, but in the rec-

inal cases from hanging back until the completion of the State's case and then for the first time moving to strike a piece of evidence crucial to getting the case to the jury.

The Court's suggestion (*ante*, p. 449, n. 4) that we may proceed on the speculation that the Mississippi Supreme Court "overlooked" the renewal of the motion for directed verdict made at the completion of the case hardly requires comment.

ord in this case which is before the Court, no such affidavit is present and there is a verification from the Justice of the Peace that no such affidavit is present in this case; therefore, we contend that the warrant under which this defendant was subjected to arrest was illegal and without force and effect. Secondly, we contend that the warrant having been issued and the testimony of this Mr. Collins on the stand to the effect that after he had placed this man under arrest, he then proceeded to go and search his car, and clearly, this is a violation of his rights under the Fourth Amendment, and it is unlawful search and seizure so the evidence that they have secured against this defendant is illegal and unlawful. Finally, we contend that on the basis of these facts that the affidavit under which the defendant was tried before the Justice of the Peace Court, as we contended yesterday, based upon the statement that was sworn to by the County Attorney, not on information and belief, but directly that this is void and defective and could give the Justice of the Peace no jurisdiction in this case. We contend under these circumstances that the State—that this is an illegal process; that this man's rights have been violated under the Fourteenth Amendment, and finally, we contend that the State has failed to prove beyond a reasonable doubt to any extent to implicate this man in this case. Now, on these basis [sic] we contend that this whole process is illegal and void, and that it has permeated and contended [sic] the whole process insofar as the jurisdiction of this Court is concerned or jurisdiction over this individual is concerned; therefore, he should be released, and we move for a directed verdict.

"Court: Motion overruled. Bring the jury back."

The motion was renewed at the completion of the defense in the following language:

"Atty Carter: Your Honor, at this time at the close of the case we want to make a motion for a directed verdict. We base it on the grounds and the reasons which we set forth in our motion for a directed verdict at the close of the State's case. We make it now at the close of the entire case on those grounds and on the grounds that the evidence has not shown beyond any reasonable doubt under the law that the defendant is guilty of the charge. We therefore make a motion for a directed verdict at this time.

"Court: Motion is overruled."

The single sentence in the first motion (*supra,* p. 460) is the only direct reference to the search and seizure question from beginning to end of the trial.

As every trial lawyer of any experience knows, motions for directed verdicts are generally made as a matter of course at the close of the prosecution's case, and are generally denied without close consideration unless the case is clearly borderline. It is simply unrealistic in this context to have expected the trial judge to pick out the single vague sentence from the directed verdict motion and to have acted upon it with the refined imagination the Court would require of him. Henry's three lawyers apparently regarded the search and seizure claim as makeweight. They had not mentioned it earlier in the trial and gave no explanation for their laxity in raising it. And when they did mention it, they did so in a cursory and conclusional sentence placed in a secondary position in a directed verdict motion. The theory underlying the search and seizure argument—that a wife's freely given permission to search the family car is invalid—is subtle to say the very least, and as the matter

was presented to the trial judge it would have been extraordinary had he caught it, or even realized that there was a serious problem to catch. But this is not all the Court would require of him. He must, in addition, realize that despite the inappropriateness of granting the directed verdict requested of him, he could partially serve the cause of the defense by taking it upon himself to frame and give cautionary instructions to the jury to disregard the evidence obtained as fruits of the search.[2]

Contrast with this the situation presented by a contemporaneous objection. The objection must necessarily be directed to the single question of admissibility; the judge must inevitably focus on it; there would be no doubt as to the appropriate form of relief, and the effect of the trial judge's decision would be immediate rather than remote. Usually the proper timing of an objection will force an elaboration of it. Had objection been made in this case during the officer's testimony about the search, it would have called forth of its own force the specific answer that the wife had given her permission and, in turn, the assertion that the permission was ineffective. The issue, in short, would have been advertently

---

[2] Furthermore, even if counsel had fully elaborated the argument and had made it in the context of a motion to strike rather than a motion for directed verdict, the trial judge could properly have exercised his discretion (as the Mississippi Supreme Court did) and denied any relief. This power is recognized in trial judges in the federal system in order to prevent the "ambushing" of a trial through the withholding of an objection that should have been made when questionable evidence was first introduced. Federalism is turned upside down if it is denied to judges in the state systems. See Fed. Rules Crim. Proc. 41 (e) and 26; *United States* v. *Milanovich,* 303 F. 2d 626, cert. denied, 371 U. S. 876; *Hollingsworth* v. *United States,* 321 F. 2d 342, 350; *Isaacs* v. *United States,* 301 F. 2d 706, 734–735, cert. denied, 371 U. S. 818; *United States* v. *Murray,* 297 F. 2d 812, 818, cert. denied, 369 U. S. 828; *Metcalf* v. *United States,* 195 F. 2d 213, 216–217.

faced by the trial judge and the likelihood of achieving a correct result maximized.

Thus the state interest which so powerfully supports the contemporaneous-objection rule is that of maximizing correct decisions and concomitantly minimizing errors requiring mistrials and retrials. The alternative for the State is to reverse a trial judge who, from a long motion, fails to pick out and act with remarkable imagination upon a single vague sentence relating to admissibility of evidence long since admitted. A trial judge is a decision-maker, not an advocate. To force him out of his proper role by requiring him to coax out the arguments and imaginatively reframe the requested remedies for the counsel before him is to place upon him more responsibility than a trial judge can be expected to discharge.

There was no "appropriate corrective action" that could have realistically satisfied the purposes of the contemporaneous-objection rule. Without question the State had an interest in maintaining the integrity of its procedure, and thus without doubt reliance on the rule in question is "adequate" to bar direct review of petitioner's federal claim by this Court.[3]

## II.

The real reason for remanding this case emerges only in the closing pages of the Court's opinion. It is pointed out that even were the contemporaneous-objection rule considered to be an adequate state ground, this would not, under *Fay* v. *Noia*, preclude consideration of Henry's fed-

---

[3] As the first opinion by the Mississippi Supreme Court shows, there is discretion in certain circumstances to lower the procedural bar. It does not follow that this Court is completely free to exercise that discretion. Even in cases from lower federal courts we do so only if there has been an abuse. If, in order to insulate its decisions from reversal by this Court, a state court must strip itself of the discretionary power to differentiate between different sets of circumstances, the rule operates in a most perverse way.

eral claim in federal habeas corpus unless it were made to appear that Henry had deliberately waived his federal claim in the state proceedings. It is then said that in the interest of "efficient administration of criminal justice" and "harmonious" relations between the federal and state judiciaries the Mississippi courts should be given the opportunity to pass, in the first instance, on the waiver issue; the prospect is entertained that such action on the part of this Court will encourage the States to grasp the "opportunity" afforded by *Fay* v. *Noia* and *Townsend* v. *Sain* by providing "state procedures, direct or collateral, for a full airing of federal claims." It is "suggested" that were this to be done "irritation" and "friction" respecting the exercise of federal habeas corpus power *vis-à-vis* state convictions "might be ameliorated."

What does all this signify? The States are being invited to voluntarily obliterate all state procedures, however conducive they may be to the orderly conduct of litigation, which might thwart state-court consideration of federal claims. But what if the States do not accept the invitation? Despite the Court's soft-spoken assertion that "settled principles" will be applied in the future, I do not think the intimation will be missed by any discerning reader of the Court's opinion that at the least a substantial dilution of the adequate state-ground doctrine may be expected. A contrary prediction is belied by the implication of the opinion that under "settled principles," the contemporaneous-objection rule relied upon in this case could be declared inadequate.

To me this would not be a move toward "harmonious" federalism; any further disrespect for state procedures, no longer cognizable at all in federal habeas corpus, would be the very antithesis of it. While some may say that, given *Fay* v. *Noia*, what the Court is attempting to do is justifiable as a means of promoting "efficiency"[4] in the administration of criminal justice, it is the sort of

efficiency which, though perhaps appropriate in some watered-down form of federalism, is not congenial to the kind of federalism I had supposed was ours. I venture to say that to all who believe the federal system as we have known it to be a priceless aspect of our Constitutionalism, the spectre implicit in today's decision will be no less disturbing than what the Court has already done in *Fay* v. *Noia*.

Believing that the judgment below rests on an adequate independent state ground, I would dismiss the writ issued in this case as improvidently granted.