**UNITED STATES of America ex rel. Calvin MANNING**

v.

**Joseph R. BRIERLEY, Superintendent. Misc. No. 3515.**

United States District Court
E. D. Pennsylvania.
Aug. 23, 1967.

Henry T. Crocker, Asst. Dist. Atty., Montgomery County, for respondent.

## OPINION

LUONGO, District Judge.

On August 28, 1959 Calvin Manning, who was then a prisoner at the State Correctional Institution at Graterford serving a sentence for burglary, fatally stabbed William Brown, a fellow inmate. On September 15, 1959 Manning was indicted for murder in the Court of Oyer and Terminer and General Jail Delivery, Montgomery County, No. 458, June Sessions 1959. Lawrence A. Brown and Richard S. Lowe were appointed by the Court to represent Manning. On March 1, 1960 a plea of guilty was entered and a hearing was held before the four judges of the Montgomery County Court to determine the degree of homicide. After hearing, Manning was adjudged guilty of murder in the second degree and was sentenced to a term of 10 to 20 years.

During the course of the hearing on the guilty plea, a statement taken from Manning on the date of the stabbing by officials of the Correctional Institution was received in evidence without objection by Manning's counsel. Manning testified at that hearing. His testimony, although in greater detail, was essentially the same as the information he had given in the statement.

Manning now seeks a writ of habeas corpus, contending that the statement was obtained in violation of his constitutional rights in that it was obtained by coercion and without warning of the right to counsel and of the right to remain silent, and that the improperly obtained statement induced his guilty plea. He charges further that his guilty plea was coerced by threats made by his attorneys and by the Superintendent of the Correctional Institution of which he had been an inmate.

In the habeas corpus petition, relator does not deny that he stabbed the victim, he contends only that he had no intent to kill, that he acted in self defense or that the circumstances of the killing were such that the crime rose no higher than voluntary manslaughter. An evidentiary hearing was held (June 21 and July 6, 1967) to determine whether the statement or the plea, or both, were coerced.

(a) *Charge Relating to the Statement.*

(i) *That the Statement was Obtained by Coercion.*

From this court's evidentiary hearing and from the state court record, I find that the stabbing took place in the prison yard at approximately 1:35 p. m. on August 28, 1959 in the presence of several prisoners and at least two guards. Within 20 minutes thereafter, the statement alleged to have been obtained by coercion had been reduced to typewriting and signed. Manning's testimony that he made the statement because the then Superintendent of the Institution, David N. Myers, threatened to have him electrocuted if he did not make a statement, is incredible and I reject it. I accept instead the testimony of Alfred T. Rundle, the present Superintendent, who was Deputy Superintendent on the date the statement was taken. Rundle testified that he was present during the entire interview, which he conducted; that Superintendent Myers had very little to say during the interview; that no threats of any kind were made by any one; that Manning was cooperative and gave the statement freely and voluntarily; and that the interview lasted not more than 15 or 20 minutes.

I also reject Manning's testimony that he believed that Myers had the power to cause him to be electrocuted. Although he was relatively young (19 years of age) at the time the statement was taken, Manning had been confined at Graterford for approximately two years. If such a threat had been made (and I have found that none was), Manning was sufficiently experienced that he would not have been taken in by it.

I am satisfied that Manning made the statement freely and voluntarily. He had been observed in the act of stabbing the victim and he gave the statement to put himself in the best possible light under the circumstances. The fact

that it was given in a matter of minutes persuades me that no coercion was used. Further, Manning at no time complained to his attorneys about any alleged threats and the lack of complaint also buttresses my conclusion that no threats were made.

(ii) *That the Statement was Invalid for Failure to Warn of Right to Counsel.*

 The statement was taken in 1959, before the Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rulings, consequently failure to warn of the right to counsel and of the right to remain silent does not invalidate the statement, Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), although it is a circumstance to be considered in determining voluntariness. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). Giving due consideration to the fact that Manning had not been given such advices and warnings, I nevertheless conclude that the statement was voluntary.

(iii) *That the Statement was Improperly Used at Guilty Plea Hearing.*

 Counsel were aware that Manning had given a statement to the prison officials. They had not seen it, but had been fully informed as to its content. Lowe testified that there was no reason to object to the use of the statement. Manning at no time intimated that he had been treated improperly or that the statement had been obtained by improper means. Lowe would not have objected to the use of the statement, in any event, because it was the strategy of the defense to have Manning take the stand and testify in essence what he had said in the statement. Because of the witnesses to the stabbing, counsel did not doubt that the Commonwealth would be able to establish that Manning had stabbed Brown. The hope of the defense lay in Manning's testimony concerning Brown's treatment of Manning and the provocation which that treatment presented to Manning. The prior consistent statement, made immediately following the stabbing, in Lowe's view, would serve to corroborate the testimony to be given at the hearing by Manning. The deliberate failure to object to the admission of the statement into evidence was a part of the trial strategy or tactics, and is a waiver of the right to vindicate the federal claim. Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Budd v. Rundle, 267 F.Supp. 49 (E.D.Pa.1967); United States ex rel. Realmuto v. Wallack, 254 F.Supp. 1006 (S.D.N.Y.1966).

(iv) *The Statement Induced the Guilty Plea.*

 This claim merits little consideration. Apart from the fact that the statement was not improperly obtained, I am satisfied that it did not induce the guilty plea. As has been pointed out before, there were eyewitnesses to the killing and it was the weight of the evidence against Manning which induced the plea, not the statement. If anything, the statement was more exculpatory than inculpatory. It offered an explanation for Manning's actions in mitigation of the degree of the offense.

(b) *Coercion with Respect to Guilty Plea.*

 The charge of coercion with respect to the guilty plea has several bases:

(i) *Coercion by Relator's Attorneys.*

Manning testified that his court appointed attorneys threatened to withdraw from the case if he did not plead guilty. The attorneys thus charged are respected members of the Montgomery County Bar, one is now the District Attorney of Montgomery County. Both attorneys testified at the hearing before me and categorically denied making such a threat. They testified that after interviewing Manning concerning the circumstances surrounding the killing, and after their independent investigation of the case, they advised Manning that

in their judgment there was little likelihood of avoiding a first degree murder verdict if the case were to be tried before a jury; that in their judgment there was a greater likelihood of obtaining a finding of voluntary manslaughter (which was the best they realistically hoped for under the circumstances) before a panel of judges on a guilty plea. The attorneys testified that the final decision was left to Manning, although they both recommended that he plead guilty. I accept the attorneys' version and reject Manning's. The guilty plea was in no way brought about by threats made by the attorneys. It was intelligently and voluntarily made by Manning after all the alternatives had been explained to him by his counsel.

(ii) *Coercion by Superintendent Myers.*

Manning testified that, in the courtroom, before the plea of guilty was entered, Superintendent Myers again threatened him with electrocution, this time if he did not plead guilty. I find this as unreliable as the rest of Manning's testimony. The layout of the courtroom was such that if any one had approached Manning and spoken to him, the attorneys would have been witness to it. Neither of the attorneys observed such an incident and Manning made no mention to them of such an incident having taken place. Furthermore, it is quite clear that the decision to enter the guilty plea had been made several weeks before March 1, 1960, the date of the alleged courtroom threat by Myers. The state court records establish, without question, that Manning's counsel had caused a writ to be issued on February 19, 1960 to produce one of the Graterford inmates to testify as a witness in Manning's behalf at the hearing on the guilty plea. I reject the claim that Superintendent Myers made a threat in the courtroom on March 1, 1960 and that Manning's guilty plea was coerced by that threat.

The petition for writ of habeas corpus will be denied.