Huntley RUFF, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 21657.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 15, 1968.

Decided Nov. 1, 1968.

Mr. Michael H. Gottesman, Washington, D. C. (appointed by this court) for appellant.

Mr. Nick S. Fisfis, Asst. U. S. Atty., for the Western District of Pennsylvania, of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Theodore Wieseman, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and McGOWAN, Circuit Judges.

DANAHER, Circuit Judge:

This appellant was indicted on four counts. The first two involved events on August 2, 1966, respecting which this appellant was charged with robbery and rape of one Mrs. H. Counts three and four involved events on August 4, 1966 again charging robbery and rape of one Miss B. In each instance the Government proved that the robbery preceded the rape. After a jury trial which commenced on November 13, 1967 and was concluded on November 22, 1967, the jury returned a verdict of "guilty as charged" on all counts.[1] The appellant predicates his entitlement to reversal on various contentions which, to the extent deemed necessary, will hereinafter be considered.

I

Officers whose beat included the area here involved had been conducting an investigation into a series of rape-robberies which had occurred in the Hill section. The various offenses partook of many similarities, each involving a subject who had been described by various victims. On August 4, 1966, two officers were giving special attention to the area when they saw this appellant run from the front door of certain premises on Third Street, S. E. where Miss B. was employed. Recognizing that the appellant came within the description of the man they sought, they commenced to follow him only presently to lose sight of him. While continuing their search, one officer on foot and the other in a cruiser, a police radio broadcast gave notice of an assault at the premises referred to. Shortly thereafter they apprehended the appellant who, upon being searched, was found to possess articles of jewelry which had been taken only minutes before from the person of Miss B. The latter not only recognized her property but promptly identified the appellant as the man who had raped her, had threatened her with a switchblade knife and had struck her about the face when she resisted.

An immediate preliminary hearing followed at which this appellant was represented by the same counsel who appeared for him at trial. During a hearing in court with respect to probable cause for the arrest, trial counsel informed the judge of his acquaintance with the factual background, "I am just saying that my familiarity with this case didn't start in this court but it started on the other side. I would like for that to be in the record." He added "This is not the first time I have heard this officer's testimony."

It was a simple matter to complete yet other preliminaries linking this appellant with the rape and robbery of Mrs. H. on August 2, 1966.

Thus it was that the Government, permissibly under FED.R.CRIM.P. 8(a)[2] joined the respective charges, so closely related in point of time, place and manner of execution.

II

Before a jury was drawn, the trial judge canvassed with counsel vari-

---

1. The appellant was sentenced to imprisonment for 5 to 15 years on each of the robbery counts and from 10 to 30 years on each of the rape counts, all sentences to run concurrently.

2. *Cf.* Drew v. United States, 118 U.S.App. D.C. 11, 331 F.2d 85 (1964); Gray v. United States, 123 U.S.App.D.C. 39, 356 F.2d 792 (1966).

ous matters which might be expected to come up during the trial. The prosecutor proposed and defense counsel agreed that various exhibits would bear distinctive numbers when related to the August 2 charges from yet other exhibits which were to be associated solely with the August 4 offenses. The trial judge then raised a question as to the propriety of severance. Trial counsel thereupon consulted with his client. Counsel informed the Judge:

> The question of prejudice to the Defendant with regard to the trying of multiple rapes has been discussed with the Defendant and considered by his counsel.

He explained:

> Whatever prejudice that may arise or might inure from this indictment would perhaps gravitate to the Defendant's favor inasmuch as his chief defense is one of insanity, not guilty by reason of insanity.

Trial counsel who had been associated with the case from its inception undoubtedly was completely aware of the nature and the scope of the evidence available to the Government. When the judge cautioned about the possibility of waiving rights, counsel replied that he was "explaining" so that the Court of Appeals might understand:

> Now, this is a matter of defensive strategy not to oppose a double-count indictment of rape. I think this tends more to support the defense's theory of not guilty by reason of insanity than if they were separate. I think the whole defense of insanity necessarily brings into question the history of the Defendant which involved anti-social conduct with respect to sexual behavior.
>
> Inasmuch as that is his defense, I think that whatever prejudice that normally arises would be out-weighed by the need to explore those areas.

Of course, as it developed during trial, defense counsel planned to offer as he later did offer extensive evidence that his client yielded to sexual compulsion. He was to argue to the jury that it was the Goverment's burden "to prove all allegations in the indictment to your satisfaction beyond a reasonable doubt." He pointed out that whatever he was to say regarding the claim of insanity "is not a concession from the defendant's point of view of his guilt or innocence." In the light of the testimony of an expert and of answers elicited on cross examination of others, he was hoping to persuade the jury that the acts charged against appellant represented efforts to project himself as, for example, that he was the husband of Mrs. H. and that the jury was not "excusing" but "classifying" the accused "based on a competent psychiatric opinion." It is clear enough that counsel was seeking to have the jury decide into "what institution are we going to place him."

That such a course represented what counsel called "defensive strategy" emerges beyond cavil. And so at the very outset, counsel purposefully declined to move for severance, expecting that the more evidence he could get before the jury respecting the sexual propensities of the appellant would prove of advantage to him when bolstered by the psychiatric testimony.

We mention such detail, first because of the claim now advanced upon appeal that it had become the duty of the trial judge to order severance, quite irrespective of the wishes of the defense at trial. Again, as the trial approached conclusion, defense counsel "for the record," as he stated, orally moved for a mistrial. The judge was then informed that the accused had a discussion at the jail about a motion for a mistrial on the ground that certain testimony by a doctor called in behalf of the defense, had not been as expected. Counsel went on to say

> but I only put this on the record for the purpose of raising the point and not arguing the point. If it does apply, I want to be able to protect the record as to whether it does apply or not. In other words, it raises the point. There is an indication in Drew

that counsel needs to raise these points.[3]

■ The judge pointed out that the decision to go ahead with consideration of the two rape charges in the one trial had been made by the defense. Trial counsel replied that it "was certainly ours," but, he continued, it was the defendant's desire that the motion be made. "We may be at odds in this area," counsel added. The motion was thereupon denied, only now to have the ruling urged upon us as ground for reversal.[4]

We have examined the transcript of the trial from beginning to end. Seldom has there been brought to us a record more completely demonstrative of guilt. The evidence is so overwhelming, that trial counsel, familiar with the case from its inception, obviously knew that a possible finding of "not guilty by reason of insanity" was his only hope. The evidence respecting the successive events was completely compartmentalized. There could have been no possible confusion in the minds of the jurors that the evidence as to the August 2 offenses was in no way whatever related to the evidence of the August 4 events. Suffice it to say that we find no prejudice.[5]

### III

The instructions of the judge were impeccable, indeed both counsel expressed themselves as satisfied with the charge as given. Such other contentions as have been urged upon us by diligent counsel appointed by this court require no discussion, in short we find ourselves satisfied that the conviction must be

Affirmed.

---

3. It becomes apparent that counsel was reading Drew v. United States, *supra* note 2, as calling for severance on the ground that it was the judge's duty to make sure "that matters don't get out of hand from a prejudicial point of view."

4. Henry v. Mississippi, 379 U.S. 443, 451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), suggests a clear answer to his claim.
   The appellant has argued here that because of the manner in which the trial had been conducted, the trial judge in effect had taken a guilty plea without satisfying himself that the requirements of FED.R.CRIM.P. 11 had been met. Appellant relies upon Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), but we find any claimed analogy to be so remote that the situation considered in *Brookhart* is completely distinguishable from what had been disclosed by the circumstances in this case. We find no abuse of discretion in the refusal by the trial judge to declare a mistrial.

5. *See* Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); *cf.* Gray v. United States, *supra* note 2.