**Vincent E. DUGUAY**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Aug. 31, 1973.

Irving Friedman, Lewiston, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

PER CURIAM.

Hearing on this petition seeking post-conviction relief (14 M.R.S.A. § 5502) was held pursuant to the mandate of this Court in Duguay v. State, 240 A.2d 738 (Me. 1968).[1]

Pursuant to 14 M.R.S.A. § 5503, Honorable Donald W. Webber, Associate Justice of the Supreme Judicial Court, was assigned to hear the petition. After hearing, he denied the relief requested. Petitioner seasonably appealed. We deny the appeal.

We have studied the record before us and considered the numerous points assigned as a basis for the appeal. The assigned Justice wrote a scholarly and exhaustive opinion. The record fully supports the factual findings contained therein; his conclusions of law reflect a correct treatment of all legal principles involved.[2] We adopt his "Findings and Order for Judgment" as the opinion of this Court and incorporate it herein (footnotes omitted):

"This was a petition for the writ of habeas corpus, petitioner being now in custody at the Maine State Prison serving a mandatory life sentence resulting from a 1962 conviction for murder. This conviction was the subject of a direct appeal which appeal was denied. State of Maine v. Duguay (1962) 158 Me. 61, 178 A.2d 129. Petitioner subsequently initiated several proceedings for post-conviction relief,

---

1. Petitioner's direct appeal from his conviction of felonious homicide punishable as murder was denied in State v. Duguay, 158 Me. 61, 178 A.2d 129 (1962).

2. We note the recent decision of the United States Supreme Court in Swenson v. Stid-ham, 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972), which fully supports the conclusions of the Justice below. *See also* State v. Collins, 297 A.2d 620 (Me.1972).

each of which was dismissed without hearing for legal insufficiency, no appeal being taken. On a petition brought in 1964 counsel was appointed for petitioner as an indigent person, opportunity was afforded to amend, and the petition was subsequently denied. No appeal was taken. When the present petition was brought in 1966, the provisions of 14 M.R.S.A., Sec. 5507 were deemed to be controlling and the petition was summarily dismissed without appointment of counsel and without hearing. On appeal from the dismissal, counsel being then appointed, the case was briefed and argued in the Law Court. In 1968 by opinion reported in Duguay v. State, 240 A.2d (Me.) 738 the appeal was sustained and the case remanded for further proceedings. Counsel was newly appointed to prosecute the remanded petition. Amendments were offered and allowed. Hearing was held at which the testimony of petitioner and other witnesses was taken. Opportunity was afforded for the filing of written argument, now completed, and the matter is ready for decision.

A pretrial conference was held after remand on July 8, 1970 with all counsel present. At this conference a request was made on behalf of petitioner that the presiding Justice disqualify himself from further participation in these proceedings. By agreement this request was treated as a motion and was acted upon accordingly. The grounds advanced in support of the motion were that the presiding Justice has shown bias and prejudice against the petitioner by (a) denying more than one prior application for post-conviction relief without hearing, and (b) by first dismissing the current petition as frivolous without hearing and without appointing counsel. The motion was denied at pretrial conference and that ruling is now incorporated in this Order. The reasons for denial are (1) that the Court should avoid multiple disqualifications of Justices insofar as possible as a matter of judicial policy; (2) that the sitting Justice has never before in connection with prior applications received

testimony from petitioner or passed upon his credibility; (3) that all prior petitions brought by petitioner and decided by the sitting Justice, including his first decision on the current petition subsequently appealed from, have been decided on issues of law and not of fact; and (4) that the sitting Justice is not conscious of any bias or prejudice against the petitioner and can determine his claims to relief impartially and objectively.

The mandate in Duguay v. State, supra, was as follows:

'Appeal sustained. The petition is remanded to the Superior Court for appointment of counsel, opportunity to amend if amendment is desired, and hearing.'

Petitioner's position at pretrial was that this mandate should be construed as ordering a new trial on the indictment for murder. I do not so construe the mandate and find that petitioner is entitled to no more than a hearing on those issues which were carefully limited and designated by the opinion in Duguay v. State.

In order to determine what issues are open to petitioner at the 'hearing' afforded by the mandate of the Law Court, it becomes necessary to examine its opinion with great care. In my view the opinion makes it abundantly clear that all issues which were or could properly have been resolved either on direct appeal or on a prior petition for post-conviction relief are now barred from consideration by 14 M.R.S.A., Secs. 5502 and 5507. The opinion quoted Sec. 5507 in full. Included therein is a provision that a 'ground for relief' is not 'waived' if it 'could not reasonably have been raised in the original or amended petition.' The opinion noted that Jackson v. Denno (1964) 378 U.S. 368, 84 S.Ct. 1774 [12 L.Ed.2d 908] was not decided until about five weeks after petitioner's 1964 petition was finally adjudicated, the fair inference being that petitioner could not reasonably have been required to raise an application of the new Jackson rule before

Jackson was decided. It does not follow that other issues not related to the Jackson rule and which could and should have been raised at least in the 1964 petition are still open to petitioner. This conclusion is further strengthened by the Law Court's apparent limitation of issues to 'the possible impact of Jackson.' I therefore conclude and rule that all issues, whether tendered by the original current petition or by amendments thereto, not directly related to the Jackson rule are barred by the statute, must be deemed waived and cannot now be considered. I further conclude and rule that when by its mandate the Law Court authorized 'an opportunity to amend if amendment is desired,' there was no intention to depart from the statute and the only permissible amendments intended were those which might be necessary to raise clearly and specifically the 'possible impact of Jackson.'

What then is properly before this Court for determination? Jackson being a review *of a collateral attack* via Federal habeas corpus of a state court conviction, announced and *applied retroactively* a new rule that due process requires that a challenge to the voluntariness of a confession be first determined by the presiding Justice in the absence of the jury. Maine practice has long comported with the requirements of Jackson. Maine practice has, however, also simultaneously required compliance with the 'contemporaneous objection' rule. In short, Maine defense counsel have always been aware that they could, by objecting to the admission of a confession or an inculpating admission on the ground of lack of voluntariness, obtain a hearing by the presiding Justice, absent the jury, and a determination of the issue of voluntariness. They have also been aware that if, for reasons of trial strategy or because voluntariness was not open to question, they elected neither to make timely objection nor to request a separate hearing by the presiding Justice, they would thereby waive any challenge to voluntariness.

The State here vigorously contends that an examination of the transcript of the proceedings at petitioner's original trial reveals that the 'contemporaneous objection' requirement was never met. When objection was made to the introduction into evidence of an inculpatory admission or to the written confession of the then respondent, lack of voluntariness was never advanced as a ground for exclusion. Other grounds were advanced which were then promptly dealt with and ruled upon by the presiding Justice. He was never either required or afforded an opportunity to rule upon any claim of lack of voluntariness. Neither was he requested to conduct a hearing apart from the jury to determine voluntariness. The State contends that petitioner cannot here complain of a violation of the Jackson requirement when at his trial he apparently conceded that his admissions and confession were voluntary. In opposition, petitioner relies on the treatment of the 'contemporaneous objection' requirement found in Henry v. State of Mississippi (1965) 379 U.S. 443, 85 S.Ct. 564 [13 L. Ed.2d 408]. The Court recognized that a 'contemporaneous objection' rule 'clearly does serve a legitimate state interest' in that '(b)y immediately apprising the trial judge of the objection, counsel gives the court the opportunity to conduct the trial without using the tainted evidence.' The Court concluded, however, that violation of the state procedural rule would not preclude relief in the federal courts, absent a waiver of the federal claim. The Court was of the view that in the interests of 'efficient administration of criminal justice, and of harmonious federal-state judicial relations,' the state court should first have an opportunity to determine whether or not the federal claim had been waived. The Court indicated that by waiver it meant either that petitioner understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, or that as a matter of trial strategy his counsel, even though without prior consultation with the accused, delib-

erately bypassed the contemporaneous objection rule. It is obvious that the petitioner in the instant case did not possess the legal knowledge or understanding requisite to his own intelligent waiver. As to the conduct of his counsel, I cannot conclude that there was any 'deliberate bypassing' in the *Henry* sense. I would be more inclined to the view that on the basis of the facts known to them, they saw no merit in any claim of lack of voluntariness and saw no reason for presenting the issue. Assuming arguendo that it could now be shown that petitioner had a valid claim with respect to voluntariness, on the basis of my understanding of *Henry* I would be forced to conclude that such an honest mistake of judgment on the part of counsel would not constitute a 'waiver' binding on the petitioner at this post-conviction stage. In so holding, I find some support in the fact that the Law Court in Duguay v. State did not find it necessary to discuss the effect of Maine's 'contemporaneous objection' rule although the fact that voluntariness had not been challenged at trial could not fail to have come to the Law Court's attention.

What precisely was meant by 'hearing' in the Law Court mandate? If no more than the usual hearing on a petition for post-conviction relief was contemplated, the petitioner would have the burden of proof applicable to civil actions. In my view this was not what was intended in the light of the Law Court treatment in Duguay. The remand was clearly for but one purpose—to satisfy the requirements of Jackson. In Jackson the Court concluded that the state court should be afforded the opportunity to provide the accused with 'an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession.' The *Jackson* Court then made it clear that if the single justice should then determine that the confession was involuntary, a new trial would result—but if a contrary decision should be reached, no new trial would be necessary

and the conviction, thus shown to be based on evidence untainted by constitutional infirmity, would be affirmed. It is this 'hearing' in the *Jackson* sense which I have afforded the petitioner. This being so and my role being essentially like that of the presiding Justice at the trial who would have afforded a similar hearing if he had been so requested, I conclude that I must find voluntariness beyond a reasonable doubt. It is against this test that I have evaluated the evidence. This would have been the burden imposed upon the State if the hearing had occurred during the trial.

The order of presentation of evidence at the 'hearing' before me followed the pleadings and not the burden of proof. The petitioner was required to first come forward with evidence tending, and for the first time, to challenge voluntariness. The State then followed with evidence, having the burden of proving voluntariness upon the whole evidence beyond a reasonable doubt. It must now be determined whether or not the State has met that burden.

In assessing the evidence, it must be noted that the events occurred nearly eleven years ago. Witnesses can hardly be expected to have complete recall of minute details after such a passage of time. The trial transcript is part of the evidence, however, and supplies testimony of the same witnesses given at a time when memories were fresh. It must also be noted that the meaning to be given to 'voluntariness' is the legal meaning which it had eleven years ago. The homicide and the trial occurred many years before *Escobedo* and *Miranda* were decided, cases which are not retrospective. Johnson v. State of New Jersey, supra [384 U.S. 719, 86 L. Ed. 1772, 16 L.Ed.2d 882.] This, however, does not mean that police denial of the right to access to advice of counsel or failure to warn accused with respect to his rights, if proven, are not factors to be considered as part of the 'totality of circumstances' surrounding admissions and confessions. *Johnson,* supra.

I find that when Vincent Duguay presented himself at the office of the Sheriff of Androscoggin County and reported a shooting episode which had just occurred at his apartment, this was the first knowledge the police had that a situation had arisen requiring investigation; that Duguay was then worried and remorseful and fully disposed to furnish the authorities with complete and truthful information as to what had transpired; that he made no request for and was in no way deprived of an opportunity to use the telephone or consult with friends, relatives or an attorney; that before making his narrative oral and subsequently his written statement he was warned that anything he said could be used against him although he was not advised that he might remain silent; that he was at no time subjected to any physical, mental or psychological compulsion nor was he offered any inducement to make a statement; that the time actually spent in the interview, once it had started, could not have exceeded an hour during which time Duguay was permitted to be seated, was provided with aspirin when he complained of headache and was served with coffee; that the statements made were his own, mainly in narrative form, and were not the product of his acceptance of suggestions made by the police; that his will was in no sense overborne by any attitude or conduct of the police; that the written statement signed by Duguay was, except for one detail which he was allowed to rectify, a fair and truthful summation of the material portions of what he had related orally and was knowingly and understandingly examined and approved by him before he signed it. Duguay, although relatively uneducated, was articulate and possessed of normal intelligence. I further find that although he was understandably both physically and emotionally weary, he was not thereby incapacitated or in any way prevented from exercising complete freedom of choice as to what he would say or whether he would say anything at all. I find that with respect to the identification of the weapon with accompanying admission made at a subsequent time when Duguay was being held in jail on probable cause, counsel having been appointed but not there present, he was well aware of the advice given him by his counsel not to talk to the officers, but of his own free will and choice preferred to disregard that advice and furnish the requested information. I find that in the 'totality of circumstances' shown to have existed here, all of his inculpating oral and written statements were beyond a reasonable doubt voluntarily given. It follows that they were properly submitted to the jury. It should be noted that the circumstances surrounding the giving of these statements were vastly different from those which tainted confessions in such cases as Culombe v. Connecticut (1961) 367 U.S. 568, 81 S.Ct. 1860 [6 L. Ed.2d 1037]; Reck v. Pate (1961) 367 U. S. 433, 81 S.Ct. 1541 [6 L.Ed.2d 948]; Turner v. Pennsylvania (1949) 338 U.S. 62, 69 S.Ct. 1352 [93 L.Ed. 1810]; Clewis v. Texas (1967) 386 U.S. 707, 87 S.Ct. 1338 [18 L.Ed.2d 423]; Townsend v. Sain (1963) 372 U.S. 293, 83 S.Ct. 745 [9 L. Ed.2d 770]; and Haynes v. Washington (1963) 373 U.S. 503, 83 S.Ct. 1336 [10 L. Ed.2d 513].

IT IS ACCORDINGLY ORDERED AND ADJUDGED that the petition be and the same is hereby denied; and that the motion for judicial disqualification be and the same is hereby denied."

The entry is:

Appeal denied.

WEBBER, J., did not sit.