(Slip Opinion)	OCTOBER TERM, 2007	1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GONZALEZ *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 06–11612.   Argued January 8, 2008—Decided May 12, 2008

If the parties consent, a federal magistrate judge may preside over the
*voir dire* and jury selection in a felony criminal trial. *Peretz* v. *United
States*, 501 U. S. 923, 933.  Before petitioner's federal trial on felony
drug charges, his counsel consented to the Magistrate Judge's presid-
ing over jury selection.  Petitioner was not asked for his own consent.
After the Magistrate Judge supervised *voir dire* without objection, a
District Judge presided at trial, and the jury returned a guilty verdict
on all counts.  Petitioner contended for the first time on appeal that it
was error not to obtain his own consent to the Magistrate Judge's
*voir dire* role.  The Fifth Circuit affirmed the convictions, concluding,
*inter alia,* that the right to have a district judge preside over *voir dire*
could be waived by counsel.

*Held:* Express consent by counsel suffices to permit a magistrate judge
to preside over jury selection in a felony trial, pursuant to the Federal
Magistrates Act, 28 U. S. C. §636(b)(3), which states: "A magistrate
judge may be assigned such additional duties as are not inconsistent
with the Constitution and laws of the United States."  Under *Gomez*
v. *United States*, 490 U. S. 858, 870, 875–876, and *Peretz, supra,* at
933, 935–936, such "additional duties" include presiding at *voir dire*
if the parties consent, but not if there is an objection.  Generally,
where there is a full trial, there are various points at which rights ei-
ther can be asserted or waived.  This Court has indicated that some
of these rights require the defendant's own consent to waive.  See,
*e.g., New York* v. *Hill*, 528 U. S. 110, 114–115.  The Court held in
*Hill,* however, that an attorney, acting without indication of particu-
lar consent from his client, could waive his client's statutory right to
a speedy trial because "[s]cheduling matters are plainly among those
for which agreement by counsel generally controls."  *Ibid.*  Similar to

the scheduling matter in *Hill*, acceptance of a magistrate judge at the jury selection phase is a tactical decision well suited for the attorney's own decision. The presiding judge has significant discretion over jury selection both as to substance—the questions asked—and tone—formal or informal—and the judge's approach may be relevant in light of the approach of the attorney, who may decide whether to accept a magistrate judge based in part on these factors. As with other tactical decisions, requiring personal, on-the-record approval from the client could necessitate a lengthy explanation that the client might not understand and that might distract from more pressing matters as the attorney seeks to prepare the best defense. Petitioner argues unconvincingly that the decision to have a magistrate judge for *voir dire* is a fundamental choice, cf. *Hill, supra,* at 114, or, at least, raises a question of constitutional significance so that the Act should be interpreted to require explicit consent. Serious concerns about the Act's constitutionality are not present here, and petitioner concedes that magistrate judges are capable of competent and impartial performance when presiding over jury selection. *Gomez, supra,* at 876, distinguished. Pp. 2–12.

483 F. 3d 390, affirmed.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SOUTER, GINSBURG, BREYER, and ALITO, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–11612

### HOMERO GONZALEZ, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[May 12, 2008]

JUSTICE KENNEDY delivered the opinion of the Court.

If the parties consent, federal magistrate judges may preside over the *voir dire* and selection of prospective jurors in a felony criminal trial. *Peretz* v. *United States*, 501 U. S. 923, 933 (1991). This case presents the question whether it suffices for counsel alone to consent to the magistrate judge's role in presiding over *voir dire* and jury selection or whether the defendant must give his or her own consent.

Homero Gonzalez was charged in the United States District Court for the Southern District of Texas on five felony drug offense counts. He is the petitioner here. At the outset of jury selection, the parties appeared before a Magistrate Judge. The Magistrate Judge asked the attorneys to approach the bench. After they complied, the Magistrate Judge said: "I need to ask the parties at this time if they are going to consent to having the United States Magistrate Judge proceed in assisting in the jury selection of this case." App. 16. Petitioner's counsel responded: "Yes, your Honor, we are." *Ibid.* The Magistrate Judge asked if petitioner was present and if he needed an

interpreter. Petitioner's counsel answered yes to both questions. Petitioner was not asked if he consented to the Magistrate Judge's presiding. The record does not permit us to infer this or even to infer that petitioner knew there was a right to be waived. The Magistrate Judge then supervised *voir dire* and jury selection. Petitioner made no objections to the Magistrate Judge's rulings or her conduct of the proceedings. A District Judge presided at the ensuing jury trial, and the jury returned a verdict of guilty on all counts.

Petitioner appealed, contending, for the first time, that it was error not to obtain his own consent to the Magistrate Judge's presiding at *voir dire*. The United States Court of Appeals for the Fifth Circuit affirmed the convictions. The court concluded petitioner could not show the error was plain and, furthermore, there was no error at all. It held the right to have an Article III judge preside over *voir dire* could be waived by petitioner's counsel. 483 F. 3d 390, 394 (2007). The Courts of Appeals differ on this issue. Compare *ibid.*, with *United States* v. *Maragh*, 174 F. 3d 1202, 1206 (CA11 1999) (requiring personal and explicit consent from the defendant); see also *United States* v. *Desir*, 273 F. 3d 39, 44 (CA1 2001) (magistrate judge may conduct jury selection unless the defendant or his attorney registers an objection). We granted certiorari. 551 U. S. ___ (2007). We agree that there was no error and hold that petitioner's counsel had full authority to consent to the Magistrate Judge's role.

The Federal Magistrates Act, 28 U. S. C. §631 *et seq.* (2000 ed. and Supp. V), permits district courts to assign designated functions to magistrate judges. For example, magistrate judges are authorized to: issue orders concerning release or detention of persons pending trial; take acknowledgments, affidavits, and depositions; and enter sentences for petty offenses. §636(a) (2000 ed. and Supp. V). They also may hear and determine, when designated

to do so, any pretrial matter pending before the district court, with the exception of certain specified motions. Magistrate judges may also conduct hearings and propose recommendations for those motions, applications for post-trial criminal relief, and conditions of confinement petitions. §636(b)(1) (2000 ed.). If the parties consent, they may conduct misdemeanor criminal trials and civil trials. §§636(a)(3) and (c)(1).

The statutory provision of direct applicability in the present case is §636(b)(3). It states: "A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." The general, nonspecific terms of this paragraph, preceded by text that sets out permissible duties in more precise terms, constitute a residual or general category that must not be interpreted in terms so expansive that the paragraph overshadows all that goes before.

In two earlier cases the Court considered the question of magistrate judges presiding over the jury selection process in felony trials. In *Gomez* v. *United States*, 490 U. S. 858 (1989), the District Judge delegated the task of selecting a jury to a Federal Magistrate Judge. Defense counsel objected, but the objection was overruled. The Court noted that "[a] critical limitation on [the magistrate judge's] expanded jurisdiction is consent," *id.,* at 870, and held that presiding, over an objection, at the preliminary selection phase of a jury trial in felony cases is not among the additional duties that a magistrate judge may assume, *id.,* at 875–876.

In *Peretz* v. *United States, supra*, the Court again considered whether a magistrate judge could preside over *voir dire* in a felony case. In that instance, however, defendant's counsel, upon being asked by the District Court at a pretrial conference (with the defendant present) if there was any objection to having jury selection before a magistrate judge, responded, "'I would love the opportunity.'"

*Id.*, at 925. Defense counsel later advised the Magistrate Judge that the defendant consented to the process. The Court clarified that in a felony trial neither the Act nor Article III forbids supervision of *voir dire* by a magistrate judge if both parties consent. *Id.,* at 935–936.

Taken together, *Gomez* and *Peretz* mean that "the additional duties" the statute permits the magistrate judge to undertake include presiding at *voir dire* and jury selection provided there is consent but not if there is an objection. We now consider whether the consent can be given by counsel acting on behalf of the client but without the client's own express consent.

At first reading it might seem that our holding here is dictated by the holding in *Peretz*. In *Peretz*, it would appear the accused was aware of the colloquy between the District Judge and defense counsel and the formal waiver before the Magistrate Judge. On this premise *Peretz* might be read narrowly to hold that a defendant may signal consent by failing to object; and indeed, the petitioner here seeks to distinguish *Peretz* on this ground. Brief for Petitioner 41–42. We decide this case, however, on the assumption that the defendant did not hear, or did not understand, the waiver discussions. This addresses what, at least in petitioner's view, *Peretz* did not. It should be noted that we do not have before us an instance where a defendant instructs the lawyer or advises the court in an explicit, timely way that he or she demands that a district judge preside in this preliminary phase.

There are instances in federal criminal proceedings where the procedural requisites for consent are specified and a right cannot be waived except with a defendant's own informed consent. Under Federal Rule of Criminal Procedure 11(b), for example, the district court is required, as a precondition to acceptance of a guilty plea, to inform the defendant in person of the specified rights he or she may claim in a full criminal trial and then verify that the

plea is voluntary by addressing the defendant. The requirement is satisfied by a colloquy between judge and defendant, reviewing all of the rights listed in Rule 11.

Statutes may also address this subject. Under 18 U. S. C. §3401(b), for example, a magistrate judge may preside over the whole trial and sentencing in a misdemeanor case but only with the express, personal consent of the defendant. The provision requires that the magistrate judge

> "carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a district judge and that he may have a right to trial by jury before a district judge or magistrate judge. The magistrate judge may not proceed to try the case unless the defendant, after such explanation, expressly consents to be tried before the magistrate judge and expressly and specifically waives trial, judgment, and sentencing by a district judge. Any such consent and waiver shall be made in writing or orally on the record."

The controlling statute in this case has a different design, however. Title 28 U. S. C. §636(b)(3) does not state that consent to preside over felony *voir dire* must be granted by following a procedure of similar clarity. As a general matter, where there is a full trial there are various points in the pretrial and trial process when rights either can be asserted or waived; and there is support in our cases for concluding that some of these rights cannot be waived absent the defendant's own consent. Whether the personal consent must be explicit and on the record or can be determined from a course of conduct may be another matter, but for now it suffices to note that we have acknowledged that some rights cannot be waived by the attorney alone. See *New York* v. *Hill*, 528 U. S. 110, 114–115 (2000).

Citing some of our precedents on point, the Court in *Hill*

gave this capsule discussion:

> "What suffices for waiver depends on the nature of
> the right at issue. '[W]hether the defendant must
> participate personally in the waiver; whether certain
> procedures are required for waiver; and whether the
> defendant's choice must be particularly informed or
> voluntary, all depend on the right at stake.' *United
> States* v. *Olano,* 507 U. S. 725, 733 (1993). For certain
> fundamental rights, the defendant must personally
> make an informed waiver. See, *e.g., Johnson* v.
> *Zerbst,* 304 U. S. 458, 464–465 (1938) (right to coun-
> sel); *Brookhart* v. *Janis,* 384 U. S. 1, 7–8 (1966) (right
> to plead not guilty). For other rights, however, waiver
> may be effected by action of counsel. 'Although there
> are basic rights that the attorney cannot waive with-
> out the fully informed and publicly acknowledged con-
> sent of the client, the lawyer has—and must have—
> full authority to manage the conduct of the trial.'
> *Taylor* v. *Illinois*, 484 U. S. 400, 417–418 (1988). As
> to many decisions pertaining to the conduct of the
> trial, the defendant is 'deemed bound by the acts of
> his lawyer-agent and is considered to have "notice of
> all facts, notice of which can be charged upon the at-
> torney."' *Link* v. *Wabash R. Co.*, 370 U. S. 626, 634
> (1962) (quoting *Smith* v. *Ayer*, 101 U. S. 320, 326
> (1880)). Thus, decisions by counsel are generally
> given effect as to what arguments to pursue, see *Jones*
> v. *Barnes*, 463 U. S. 745, 751 (1983), what evidentiary
> objections to raise, see *Henry* v. *Mississippi*, 379 U. S.
> 443, 451 (1965), and what agreements to conclude re-
> garding the admission of evidence, see *United States*
> v. *McGill*, 11 F. 3d 223, 226–227 (CA1 1993). Absent
> a demonstration of ineffectiveness, counsel's word on
> such matters is the last." *Ibid.*

The issue in *Hill* was whether the attorney, acting without

indication of particular consent from his client, could waive his client's statutory right to a speedy trial pursuant to the Interstate Agreement on Detainers. The Court held that the attorney's statement, without any showing of the client's explicit consent, could waive the speedy trial right: "Scheduling matters are plainly among those for which agreement by counsel generally controls." *Id.,* at 115.

Giving the attorney control of trial management matters is a practical necessity. "The adversary process could not function effectively if every tactical decision required client approval." *Taylor* v. *Illinois*, 484 U. S. 400, 418 (1988). The presentation of a criminal defense can be a mystifying process even for well-informed laypersons. This is one of the reasons for the right to counsel. See *Powell* v. *Alabama*, 287 U. S. 45, 68–69 (1932); ABA Standards for Criminal Justice, Defense Function 4–5.2, Commentary, p. 202 (3d ed. 1993) ("Many of the rights of an accused, including constitutional rights, are such that only trained experts can comprehend their full significance, and an explanation to any but the most sophisticated client would be futile"). Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial. These matters can be difficult to explain to a layperson; and to require in all instances that they be approved by the client could risk compromising the efficiencies and fairness that the trial process is designed to promote. In exercising professional judgment, moreover, the attorney draws upon the expertise and experience that members of the bar should bring to the trial process. In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law

should so assume.  See *Jones* v. *Barnes*, 463 U. S. 745, 751
(1983); see also *Tollett* v. *Henderson*, 411 U. S. 258, 267–
268 (1973); cf. ABA Standards, *supra*, at 202 ("Every
experienced advocate can recall the disconcerting experi-
ence of trying to conduct the examination of a witness or
follow opposing arguments or the judge's charge while the
client 'plucks at the attorney's sleeve' offering gratuitous
suggestions").  To hold that every instance of waiver re-
quires the personal consent of the client himself or herself
would be impractical.

Similar to the scheduling matter in *Hill*, acceptance of a
magistrate judge at the jury selection phase is a tactical
decision that is well suited for the attorney's own decision.
Under Rule 24 of the Federal Rules of Criminal Procedure,
the presiding judge has significant discretion over the
structure of *voir dire*.  The judge may ask questions of the
jury pool or, as in this case, allow the attorneys for the
parties to do so.  Fed. Rule Crim. Proc. 24(a); App. 20.  A
magistrate judge's or a district judge's particular approach
to *voir dire* both in substance—the questions asked—and
in tone—formal or informal—may be relevant in light of
the attorney's own approach.  The attorney may decide
whether to accept the magistrate judge based in part on
these factors.  As with other tactical decisions, requiring
personal, on-the-record approval from the client could
necessitate a lengthy explanation the client might not
understand at the moment and that might distract from
more pressing matters as the attorney seeks to prepare
the best defense.  For these reasons we conclude that
express consent by counsel suffices to permit a magistrate
judge to preside over jury selection in a felony trial, pur-
suant to the authorization in §636(b)(3).

Our holding is not inconsistent with reading other
precedents to hold that some basic trial choices are so
important that an attorney must seek the client's consent
in order to waive the right.  See, *e.g., Florida* v. *Nixon*, 543

U. S. 175, 187 (2004) (identifying the choices "'to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal'" as examples (quoting *Jones, supra,* at 751)). Petitioner argues that the decision to have a magistrate judge rather than an Article III judge preside at jury selection is a fundamental choice, cf. *Hill,* 528 U. S., at 114, or, at least, raises a question of constitutional significance so that we should interpret the Act to require an explicit personal statement of consent before the magistrate judge can proceed with jury selection.

We conclude otherwise. Under the avoidance canon, "when 'a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'" *Harris* v. *United States,* 536 U. S. 545, 555 (2002) (quoting *United States ex rel. Attorney General* v. *Delaware & Hudson Co.,* 213 U. S. 366, 408 (1909)). The canon, however, does not apply unless there are "serious concerns about the statute's constitutionality." *Harris, supra,* at 555; see also *Reno* v. *Flores,* 507 U. S. 292, 314, n. 9 (1993).

Those concerns are not present here. Petitioner concedes that a magistrate judge is capable of competent and impartial performance of the judicial tasks involved in jury examination and selection. Reply Brief for Petitioner 12–13; see also *Peretz,* 501 U. S., at 935 ("The Act evinces a congressional belief that magistrates are well qualified to handle matters of similar importance to jury selection"). The Act contains some features to ensure impartiality. See, *e.g.*, 28 U. S. C. §§631(i) (establishing requirements for removal), 632 (limiting concurrent employment), 634(b) (providing salary protection during the term). And "'the district judge—insulated by life tenure and irreducible salary—is waiting in the wings, fully able to correct errors.'" *Peretz, supra,* at 938 (quoting *United States* v. *Raddatz,* 447 U. S. 667, 686 (1980) (Blackmun, J., concur-

ring)). Here petitioner made no objections to the rulings by the Magistrate Judge. Had objections been made, nothing in the record or the rules indicates that the District Judge could not have ruled on the issues, all with no delay or prejudice to any trial that had commenced. See *Peretz*, *supra*, at 935, n. 12, 939. These factors support our determination that consent of counsel suffices to allow a magistrate judge to supervise *voir dire*. This is not a case where the magistrate judge is asked to preside or make determinations after the trial has commenced and it is arguably difficult or disruptive for a district judge to review any objections that might have been made to the magistrate judge's rulings.

Petitioner notes that *Peretz* considered supervision over entire civil and misdemeanor trials comparable to presiding over *voir dire* at a felony trial. 501 U. S., at 933. It follows, he argues, that §636(b)(3) must require, as does 18 U. S. C. §3401(b), express personal consent by the defendant before a magistrate judge may preside over *voir dire*. But it is not obvious that Congress would have thought these matters required the same form of consent. Aside from the fact that the statutory text is different, there are relevant differences between presiding over a full trial and presiding over *voir dire*. Were petitioner correct, one would think the Act would require at least the same form of consent to authorize a magistrate judge to preside over either a civil or a misdemeanor trial (which *Peretz* also deemed to be of comparable importance). Our interpretation of the Act indicates otherwise. Compare §3401(b), with *Roell* v. *Withrow*, 538 U. S. 580, 590 (2003) (concluding that parties may authorize a full-time magistrate judge to preside over a civil trial via implied consent).

Petitioner argues that our view of the issue should be informed by *Gomez*'s conclusion that having a magistrate judge during jury selection without consent is structural

error, not subject to harmless-error review. See 490 U. S., at 876. The exemption of certain errors from harmless-error review "recognizes that some errors necessarily render a trial fundamentally unfair." *Rose* v. *Clark*, 478 U. S. 570, 577 (1986); see also *id.,* at 577–578. In petitioner's view, *Gomez* establishes that the issue in this case is of sufficient gravity or concern that personal consent must be required.

The Court held in *Gomez* that imposition of a magistrate judge over objection was structural error, violating the basic right to a trial conducted at all critical stages by a judicial officer with appropriate jurisdiction. 490 U. S., at 876. It does not follow, however, that this structural aspect requires an insistence on personal consent. Here, jurisdiction turns on consent; and for the reasons discussed above an attorney, acting on the client's behalf, can make an informed decision to allow the magistrate judge to exercise the jurisdiction Congress permits.

Although a criminal defendant may demand that an Article III judge preside over the selection of a jury, the choice to do so reflects considerations more significant to the realm of the attorney than to the accused. Requiring the defendant to consent to a magistrate judge only by way of an on-the-record personal statement is not dictated by precedent and would burden the trial process, with little added protection for the defendant.

Pursuant to 28 U. S. C. §636(b)(3) a magistrate judge may preside over jury examination and jury selection only if the parties, or the attorneys for the parties, consent. Consent from an attorney will suffice. We do not have before us, and we do not address, an instance where the attorney states consent but the party by express and timely objection seeks to override his or her counsel. We need not decide, moreover, if consent may be inferred from a failure by a party and his or her attorney to object to the presiding by a magistrate judge. These issues are not

presented here.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————

No. 06–11612

————

## HOMERO GONZALEZ, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[May 12, 2008]

JUSTICE SCALIA, concurring in the judgment.

I agree with the Court that no statute or rule requires that petitioner personally participate in the waiver of his right to have an Article III judge oversee *voir dire*. As to whether the Constitution requires that, the Court holds that it does not because it is a decision more tactical than fundamental—"more significant to the realm of the attorney than to the accused." *Ante*, at 11. I agree with the Court's conclusion, but not with the tactical-vs.-fundamental test on which it is based.

Petitioner and the Government do not dispute that petitioner's counsel consented to have a magistrate judge oversee *voir dire*. The issue is whether that consent—consent of counsel alone—effected a valid waiver of petitioner's right to an Article III judge. It is important to bear in mind that we are not speaking here of action taken by counsel over his client's objection—which would have the effect of revoking the agency with respect to the action in question. See *Brookhart* v. *Janis*, 384 U. S. 1, 7–8 (1966). There is no suggestion of that. The issue is whether consent expressed by counsel alone is ineffective simply because the defendant himself did not express to the court his consent.

I think not. Our opinions have sometimes said in passing that, under the Constitution, certain "fundamental" or

"basic" rights cannot be waived unless a defendant personally participates in the waiver. See, *e.g., Taylor* v. *Illinois*, 484 U. S. 400, 417–418 (1988); *United States* v. *Olano*, 507 U. S. 725, 733 (1993). We have even repeated the suggestion in cases that actually involved the question whether a criminal defendant's attorney could waive a certain right—but never in a case where the suggestion governed the disposition. In *New York* v. *Hill*, 528 U. S. 110 (2000), although we noted that "[f]or certain fundamental rights, the defendant must personally make an informed waiver," *id.,* at 114, we in fact found such a requirement inapplicable; and even that determination can be viewed as resting upon an interpretation of the statute creating the right that counsel had waived, see *id.,* at 115. And in *Florida* v. *Nixon*, 543 U. S. 175 (2004), although we said that "counsel lacks authority to consent to a guilty plea on [his] client's behalf," *id.,* at 187, our holding was simply that counsel's concession of guilt to the jury did not amount to a guilty plea, *id.,* at 188, and did not constitute ineffective assistance of counsel, *id.,* at 192. As detailed in the margin, the decisions often cited for the principle of attorney incapacity are inapposite;[1] except for

----

[1] On the right to jury, *Thompson* v. *Utah*, 170 U. S. 343 (1898), held, at most, that the right was not waivable. *Id.,* at 353–354. The Court later questioned whether *Thompson* even held that, and went on to hold that the right is waivable. See *Patton* v. *United States*, 281 U. S. 276, 293 (1930). The observation at the end of *Patton* that "before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant," *id.,* at 312, was dictum; the *Patton* defendants had all agreed to the waiver, *id.,* at 286. Even less germane is *Adams* v. *United States ex rel. McCann*, 317 U. S. 269 (1942), which held only that an unrepresented defendant can waive his right to jury without the advice of counsel. *Id.,* at 278–279.

On the right to trial, *Brookhart* v. *Janis*, 384 U. S. 1 (1966), held only that a defendant's expressed wish to proceed to trial must prevail over his attorney's contrary opinion. See *id.,* at 7–8. Other decisions have said that waiver of the right to trial must be knowing and voluntary,

one line of precedent, no decision of this Court holds that, as a constitutional matter, a defendant must personally waive certain of his "fundamental" rights—which typically are identified as the rights to trial, jury, and counsel. The exceptional line of precedent involves the right to counsel. See *Johnson* v. *Zerbst*, 304 U. S. 458, 464–465 (1938). But that right is essentially *sui generis*, since an unrepresented defendant cannot possibly waive his right to counsel except in person. Cases involving that right therefore provide no support for the principle that the Constitution sometimes forbids attorney waiver.

Since a formula repeated in dictum but never the basis for judgment is not owed *stare decisis* weight, see *Lingle* v. *Chevron U. S. A. Inc.*, 544 U. S. 528, 545–546 (2005), our precedents have not established the rule of decision applicable in this case. I would not adopt the tactical-vs.-fundamental approach, which is vague and derives from nothing more substantial than this Court's say-so. One respected authority has noted that the approach has a "potential for uncertainty," and that our precedents purporting to apply it "have been brief and conclusionary." 3 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §§11.6(a), (c), pp. 784, 796 (3d ed. 2007). That is surely an understatement. What makes a right tactical? Depending on the circumstances, waiving *any* right can be a tactical decision. Even pleading guilty, which waives the right to trial, is highly tactical, since it usually requires balancing the prosecutor's plea bargain against the pros-

———————

see, *e.g., Brady* v. *United States*, 397 U. S. 742, 748 (1970), but waiver by counsel was not at issue in those cases. Even if, in the case of waiver by counsel, the knowing and voluntary requirement applies to the defendant himself, that still permits counsel to waive on behalf of an informed and agreeing client. Equally inapposite is *Boykin* v. *Alabama*, 395 U. S. 238 (1969), which held that a knowing and voluntary waiver of the right to trial cannot be inferred from a silent record. *Id.,* at 244.

pect of better and worse outcomes at trial.

Whether a right is "fundamental" is equally mysterious. One would think that any right guaranteed by the Constitution would be fundamental. But I doubt many think that the Sixth Amendment right to confront witnesses cannot be waived by counsel. See *Diaz* v. *United States*, 223 U. S. 442, 444, 452–453 (1912). Perhaps, then, specification in the Constitution is a necessary, but not sufficient, condition for "fundamental" status. But if something more is necessary, I cannot imagine what it might be. Apart from constitutional guarantee, I know of no objective criterion for ranking rights. The Court concludes that the right to have an Article III judge oversee *voir dire* is not a fundamental right, *ante*, at 8–10, without answering whether it is even a constitutional right,[2] and without explaining what makes a right fundamental in the first place. The essence of "fundamental" rights continues to elude.

I would therefore adopt the rule that, as a constitutional matter, all waivable rights (except, of course, the right to counsel) can be waived by counsel. There is no basis in the Constitution, or as far as I am aware in common-law practice, for distinguishing in this regard between a criminal defendant and his authorized representative. In fact, the very notion of representative litigation suggests that the Constitution draws no distinction between them.

_____

[2] We have avoided addressing whether the right has a basis in the Constitution. In *Gomez* v. *United States*, 490 U. S. 858 (1989), we interpreted the Federal Magistrate Act, 28 U. S. C. §636(b)(3), not to permit a magistrate judge to oversee *voir dire*, 490 U. S., at 875–876, making it unnecessary to consider whether there was a constitutional right to have an Article III judge oversee *voir dire*. In *Peretz* v. *United States*, 501 U. S. 923 (1991), we held that judicial overseeing of the *voir dire* had been waived, *id.,* at 936–937, which obviated having to decide whether it was a constitutional right. See *United States* v. *Olano*, 507 U. S. 725, 732–733 (1993) (waiver extinguishes the error of not complying with a legal rule).

"A prisoner . . . who defends by counsel, and silently acquiesces in what they agree to, is bound as any other principal by the act of his agent." *People* v. *Rathbun*, 21 Wend. 509, 543 (N. Y. Sup. Ct. 1839). The *Rathbun* opinion, far from being the outlier view of a state court, was adopted as the common law position by eminent jurists of the 19th century, including Chief Justice Shaw of the Supreme Judicial Court of Massachusetts. See *Commonwealth* v. *Dailey*, 66 Mass. 80, 83 (1853) (discussing *Rathbun* with approval in a case involving waiver of the right to a 12-man jury).

It may well be desirable to require a defendant's personal waiver with regard to certain rights. Rule 11(c) of the Federal Rules of Criminal Procedure, for example, provides that before accepting a guilty plea the court must "address the defendant personally in open court," advise him of the consequences of his plea, and assure that the plea is voluntary. See also Rule 10(b) (waiver of right to appear at arraignment must be in writing signed by counsel and defendant). I do not contend that the Sixth Amendment's right to assistance of counsel prohibits such requirements of personal participation, at least where they do not impair counsel's expert assistance.

Even without such rules it is certainly prudent, to forestall later challenges to counsel's conduct, for a trial court to satisfy itself of the defendant's personal consent to certain actions, such as entry of a guilty plea or waiver of jury trial, for which objective norms require an attorney to seek his client's authorization. See, *e.g.,* ABA Model Rule of Professional Conduct 1.2(a) (2007) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify"). But I know of no basis for saying that the *Constitution* automatically invalidates *any* trial action not taken by the defendant personally, though taken by his author-

ized counsel. I know of no way of determining, except by sheer prescription, which trial rights are *ex ante* and *by law* subject to such a limitation upon waiver. Assuredly the tactical-fundamental dichotomy does not do the trick. I would leave this matter of placing reasonable limits upon the right of agency in criminal trials to be governed by positive law, in statutes and rules of procedure.

I would hold that petitioner's counsel's waiver was effective because no rule or statute provides that the waiver come from the defendant personally.

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–11612

———————

## HOMERO GONZALEZ, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[May 12, 2008]

JUSTICE THOMAS, dissenting.

The Court holds today that neither the Federal Magistrates Act, 28 U. S. C. §631 *et seq.*, nor the Constitution requires that a criminal defendant on trial for a felony personally give his informed consent before a magistrate judge may preside over jury selection. The Court proceeds from the premise, established in *Peretz* v. *United States*, 501 U. S. 923 (1991), that the Federal Magistrates Act authorizes magistrate judges to preside over felony jury selection if the parties consent. I reject that premise, and for the reasons set forth below, would overrule *Peretz* and hold that the delegation of *voir dire* in this case was statutory error. I further conclude that the error may be corrected despite petitioner's failure to raise a timely objection in the District Court. Accordingly, I would reverse the judgment below.

I

A

This is the third time the Court has addressed the circumstances under which a district judge may delegate felony *voir dire* proceedings to a magistrate judge under the "additional duties" clause of the Federal Magistrates Act, 28 U. S. C. §636(b)(3). In *Gomez* v. *United States*, 490 U. S. 858 (1989), the Court unanimously held that

§636(b)(3) does not authorize delegation of felony *voir dire* proceedings to a magistrate judge. Although the defendants in *Gomez* had objected to the delegation, neither the Court's reasoning nor its conclusion turned on that fact. Rather, the Court's interpretation of §636(b)(3) rested primarily on two inferences drawn from the statutory scheme. First, the Court reasoned that Congress' "carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial." *Id.*, at 872. Second, the Court found it "incongruous" to assume that Congress intended felony jury selection to be among magistrate judges' additional duties but failed to provide an explicit standard of review as it had done for other duties described in the statute. *Id.*, at 874. Neither of these inferences depended on the presence or absence of the parties' consent, and the Court's conclusion was accordingly unqualified: "Congress . . . did not contemplate inclusion of jury selection in felony trials among a magistrate's additional duties." *Id.*, at 872; see also *ibid.*, n. 25 ("[W]e decide that the Federal Magistrates Act does not allow the delegation of jury selection to magistrates"); *id.*, at 875–876 ("The absence of a specific reference to jury selection in the statute, or indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause to embrace this function" (footnote omitted)).

Two years later, the Court decided *Peretz*. Peretz's trial took place before this Court's decision in *Gomez*, and his attorney had agreed to the delegation of *voir dire*, assuring the Magistrate Judge that his client had consented. During the pendency of Peretz's appeal the Court decided *Gomez*, and Peretz argued that *Gomez* required reversal of his conviction. The Court of Appeals disagreed, concluding that he had waived any challenge to the Magistrate Judge's supervision of *voir dire*. Before this Court, the

Government defended the Court of Appeals' holding as to waiver but confessed error with respect to the delegation of *voir dire*, "agree[ing] with petitioner . . . that *Gomez* foreclose[d] the argument that the statute may be read to authorize magistrate-conducted voir dire when the defendant consents." Brief for United States in *Peretz* v. *United States*, O. T. 1990, No. 90–615, p. 9.

Despite the Government's confession of error, the Court, "[i]n an amazing display of interpretive gymnastics," *Peretz*, *supra*, at 940–941 (Marshall, J., dissenting), held in a 5-to-4 decision that §636(b)(3) does, after all, permit magistrate judges to conduct felony *voir dire* proceedings, so long as the parties consent. There is no need here to reproduce *Peretz*'s flawed reasoning or to rehash the debate between the majority and dissenting opinions. Suffice it to say that, in my view, *Gomez* correctly interpreted §636(b)(3) not to authorize delegation of felony jury selection regardless of the parties' consent, and I agree with the dissenters in *Peretz* that the Court's contrary conclusion in that case was based on a patently "revisionist construction of the Act." 501 U. S., at 947 (opinion of Marshall, J.).

The only question, then, is whether to give *stare decisis* effect to *Peretz*'s erroneous conclusion that §636(b)(3) authorizes magistrate judges to conduct felony jury selection if the parties consent. Although "[i]t is true that we give stronger *stare decisis* effect to our holdings in statutory cases than in constitutional cases," that rule "is not absolute, and we should not hesitate to allow our precedent to yield to the true meaning of an Act of Congress when our statutory precedent is 'unworkable' or 'badly reasoned.'" *Clark* v. *Martinez*, 543 U. S. 371, 401–402 (2005) (THOMAS, J., dissenting). *Peretz* is both. Two considerations in particular convince me that *Peretz* should be overruled.

### B

First, *Peretz* leaves the Court with no principled way to decide the statutory question presented in this case. Contrary to the Court's suggestion, the question presented here is not whether "every instance of waiver requires the personal consent of the client," *ante*, at 8; rather, it is the far narrower question whether §636(b)(3) requires the defendant's personal consent before felony jury selection may be delegated to a magistrate judge. The Court answers this question in the negative, but does not point to anything in §636(b)(3) or in the broader statutory scheme that supports its conclusion. It does not because it cannot. Not having provided for delegation of felony *voir dire* proceedings under the additional duties clause, Congress of course did not specify whether the parties' consent is required. And "[b]ecause the additional duties clause contains no language predicating delegation of an additional duty upon litigant consent, it likewise contains nothing indicating what constitutes 'consent' to the delegation of an additional duty." *Peretz*, *supra*, at 947, n. 6 (Marshall, J., dissenting).

Congress' silence is particularly telling in the context of the Federal Magistrates Act. Elsewhere in the Act, Congress took great care to specify whether and in what manner the litigants must consent before a magistrate judge may assume significant duties. In §636(c)(1), for example, Congress provided that full-time magistrate judges may conduct civil trials "[u]pon the consent of the parties," and that part-time magistrate judges may do so "[u]pon the consent of the parties, pursuant to their specific written request." Congress further provided in §636(c)(2) that "[t]he decision of the parties shall be communicated to the clerk of court," and, if the parties do not consent, the district judge may not raise the matter again without "advis[ing] the parties that they are free to withhold consent without adverse substantive consequences." I have

previously explained at length why §636(c) is best read to require the express consent of the parties, see *Roell* v. *Withrow*, 538 U. S. 580, 591–597 (2003) (dissenting opinion), and I will not repeat that discussion here, other than to point out that Congress obviously focused on the issue and gave detailed instructions regarding the form of the parties' consent.

Even more telling is that Congress required the defendant's express, informed consent before a magistrate judge may conduct a misdemeanor trial. Section 636(a)(3) authorizes magistrate judges to conduct certain misdemeanor trials "in conformity with and subject to the limitations of" 18 U. S. C. §3401, which spells out in detail the manner in which the defendant must consent:

> "The magistrate judge shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a district judge and that he may have a right to trial by jury before a district judge or magistrate judge. The magistrate judge may not proceed to try the case unless the defendant, after such explanation, expressly consents to be tried before the magistrate judge and expressly and specifically waives trial, judgment, and sentencing by a district judge. Any such consent and waiver shall be made in writing or orally on the record." §3401(b).

The Court recites the language of §3401(b), but gives it no weight in its analysis. It recognizes that "[t]here are instances in federal criminal proceedings where the procedural requisites for consent are specified and a right cannot be waived except with a defendant's own informed consent." *Ante*, at 4. But it is given no pause by the fact that the Federal Magistrates Act, the very statute it interprets to permit delegation of *felony* proceedings without the defendant's "own informed consent," expressly requires such consent before a magistrate judge may con-

duct a *misdemeanor* trial.  Instead, the Court worries that
"requiring personal, on-the-record approval from the client
could necessitate a lengthy explanation the client might
not understand at the moment and that might distract
from more pressing matters," *ante*, at 8, heedless of the
fact that Congress plainly viewed any such "burden[s] [on]
the trial process," *ante*, at 11, as outweighed by the need to
obtain the defendant's personal consent before a magis-
trate judge may preside, even over a misdemeanor trial.

The Court glides over this glaring anomaly, asserting
that "[t]he controlling statute in this case has a different
design," and "does not state that consent to preside over
felony *voir dire* must be granted by following a procedure
of similar clarity."  *Ante*, at 5.  But there is only one stat-
ute at issue here—the Federal Magistrates Act expressly
incorporates 18 U. S. C. §3401(b)—and the fact that it
does not mandate "a procedure of similar clarity" for dele-
gation of felony jury selection is hardly surprising, since
§636(b)(3)—which provides in its entirety that "[a] magis-
trate judge may be assigned such additional duties as are
not inconsistent with the Constitution and laws of the
United States"—says not a word about delegation of felony
jury selection, much less about whether and in what form
the parties must consent.

The Court further suggests that §3401(b) is inconse-
quential because "there are relevant differences between
presiding over a full trial and presiding over *voir dire*."
*Ante*, at 10.  But even *Peretz* recognized that "supervision
of entire civil and misdemeanor trials" is "comparable in
responsibility and importance to presiding over *voir dire*
at a felony trial."  501 U. S., at 933.  And of course, it was
Congress' omission of any mode of consent for delegation
of felony proceedings, in contradistinction to its detailed
treatment of the consent required for delegation of civil
and misdemeanor trials, that drove *Gomez*'s analysis.  490
U. S., at 872 ("[T]he carefully defined grant of authority to

conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial"); see also *Peretz*, *supra*, at 955 (SCALIA, J., dissenting) ("By specifically authorizing magistrates to perform duties in civil and misdemeanor trials, and specifying the manner in which parties were to express their consent in those situations, the statute suggested *absence* of authority to preside over felony trials through some (unspecified) mode of consent"). Today's decision is truly an ironic reversal. The Court once thought that Congress' differential treatment of felony jury selection and misdemeanor trials was a reason to believe that Congress had *entirely withheld* authority to preside over felony jury selection. Today, however, the Court says that the "relevant differences" between these responsibilities support the conclusion that Congress permitted delegation of felony jury selection upon a *lesser showing* of consent than that required for delegation of a misdemeanor trial.

In the end, I am sympathetic to petitioner's argument that §636(b)(3) should be read *in pari materia* with §3401(b). See Brief for Petitioner 38 ("If, in enacting the [Federal Magistrates Act] Congress believed a defendant's explicit, personal consent was constitutionally necessary to bestow authority upon a magistrate judge in federal misdemeanor cases, then *a fortiori* Congress would have believed that such explicit, personal consent is necessary to permit a magistrate judge to conduct felony jury selection"). And I share his view that Congress undoubtedly would have adopted something akin to §3401(b)'s requirements had it authorized delegation of felony jury selection. See *Peretz*, *supra*, at 947, n. 6 (Marshall, J., dissenting) ("I would think, however, that the standard governing a party's consent to delegation of a portion of a felony trial under the additional duties clause should be at least as strict as that governing delegation of a misde-

meanor trial to a magistrate").

Nonetheless, I do not believe that *Peretz*'s erroneous interpretation of §636(b)(3) gives me license to rewrite the Federal Magistrates Act to reflect what I think Congress would have done had it contemplated delegation of felony jury selection or foreseen the Court's decision in *Peretz*. Cf. Brief for Petitioner 33 ("What the Court is left to do in petitioner's case is to fill the gap by determining what Congress would have done in enacting the [Federal Magistrates Act] had it expressly addressed the 'crucial' consent issue" (footnote omitted)).  Where, as here, a mistaken interpretation of a statute leaves the Court with no principled way to answer subsequent questions that arise under the statute, it seems to me that the better course is simply to acknowledge and correct the error.  Cf. *Kimbrough* v. *United States*, 552 U. S. ___, ___ (2007) (slip op., at 3) (THOMAS, J., dissenting).

C

A second reason why I would not give *stare decisis* effect to *Peretz* is that it requires us to wade into a constitutional morass.  In *Gomez*, the Court declined to decide whether the Constitution permits delegation of felony jury selection to a magistrate judge.  490 U. S., at 872, n. 25.  *Peretz* simply brushed aside that difficult constitutional question. See 501 U. S., at 936 ("There is no constitutional infirmity in the delegation of felony trial jury selection to a magistrate when the litigants consent"); cf. *id.*, at 948–952 (Marshall, J., dissenting) (discussing the "serious constitutional question" "whether jury selection by a magistrate— even when a defendant consents—is consistent with Article III"); *id.*, at 956 (SCALIA, J., dissenting) (not resolving "the serious and difficult constitutional questions raised by the [majority's] construction," but suggesting that the Court's reasoning rendered "the doctrine of unconstitutional delegation" "a dead letter").

Today the Court's result requires it to go even further. In addition to reaffirming *Peretz*'s questionable holding that the Constitution permits delegation of felony *voir dire* proceedings to a non-Article III judge, the Court decides that a criminal defendant's waiver of his right to an Article III judge need not be personal and informed. The Court treats this as an easy question, concluding that the choice between an Article III judge and a magistrate judge is not among those "basic trial choices," *ante*, at 8, that require a defendant's personal consent because "a magistrate judge is capable of competent and impartial performance of the judicial tasks involved in jury examination and selection," and because magistrate judges are supervised by Article III judges, *ante*, at 9, 10. Under our precedents, however, the question is not so easily dispatched.

Our cases shed little light on whether and when a criminal defendant must personally waive a constitutional right. Although we have previously stated that, "[f]or certain fundamental rights, the defendant must personally make an informed waiver," *New York* v. *Hill*, 528 U. S. 110, 114 (2000), many of the cases we have cited for that proposition do not in fact stand for it. For example, we have cited *Brookhart* v. *Janis*, 384 U. S. 1 (1966), for the proposition that the defendant's personal consent is required for a waiver of his right to plead not guilty. See, *e.g.*, *Hill*, *supra*, at 114. But *Brookhart*'s holding was narrower. The only question presented there was "whether counsel has power to enter a plea *which is inconsistent with his client's expressed desire* and thereby waive his client's constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him." 384 U. S., at 7 (emphasis added). *Brookhart* thus did not decide whether the Constitution prohibits counsel from entering a guilty plea on his client's behalf in cases where the defendant has not expressed a contrary desire.

Similarly, *Patton* v. *United States*, 281 U. S. 276 (1930), a case often cited for the proposition that the right to a jury trial can be waived only by the defendant personally, does not draw a clear distinction between the defendant's own consent and that of his attorney. The Court stated in dicta that "the express and intelligent consent of the defendant" is required "before any waiver [of the right to a jury trial] can become effective." *Id.*, at 312. But that requirement appears to have been satisfied in *Patton* by counsel's representation to the trial court that he had conferred with his clients and obtained their consent. *Id.*, at 286–287.

Our cases thus provide little relevant guidance. JUSTICE SCALIA may well be correct that, as a matter of first principles, there is no right (other than perhaps the *sui generis* right to counsel) that cannot be waived by a defendant's attorney, acting as the duly authorized agent of his client. See *ante*, at 4 (opinion concurring in judgment). But if I were to accept the Court's oft-repeated dictum that there are certain fundamental rights that can be waived only by the defendant personally, see, *e.g.*, *Florida* v. *Nixon*, 543 U. S. 175, 187 (2004) ("[C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate"); *Hill*, *supra*, at 114; *Taylor* v. *Illinois*, 484 U. S. 400, 417–418 (1988) ("[T]here are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client"), I see no reason why the right to an Article III judge should not be among them.

There is no apparent reason, for example, why the right to an Article III judge should be deemed any less fundamental, or its exercise any more "'tactical,'" *ante*, at 7 (opinion of the Court) (quoting *Taylor, supra*, at 418), than the right to a jury trial. The Framers viewed independent judges, no less than the right to a jury of one's peers, as

indispensable to a fair trial.  See, *e.g.*, *United States* v. *Hatter*, 532 U. S. 557, 568–569 (2001) (discussing the Framers' overriding concern for an independent Judiciary and quoting Chief Justice Marshall's statement that the "'greatest scourge . . . ever inflicted'" "'was an ignorant, a corrupt, or a dependent Judiciary'" (quoting Proceedings and Debates of the Virginia State Convention, of 1829–1830, p. 619 (1830))).  For that reason, the Constitution affords Article III judges the structural protections of life tenure and salary protection.  Art. III, §1.  The Court's observation that "a magistrate judge is capable of competent and impartial performance" of judicial duties, *ante*, at 9, is thus beside the point.\*  Magistrate judges do not

——————

\*Equally beside the point is the fact that magistrate judges are appointed by, and subject to the supervision of, district judges.  The Court reassures itself by hypothesizing that the District Court could have ruled on any objections to the Magistrate Judge's rulings.  *Ante,* at 10.  But the Court once "harbor[ed] serious doubts" that a district judge who was not present during jury selection could "meaningfully" review a magistrate judge's rulings, *Gomez* v. *United States*, 490 U. S. 858, 874 (1989), because "no transcript can recapture the atmosphere of the *voir dire*," *id.*, at 875.  The Court does not explain what has intervened to dispel those doubts.  And even if district judges could meaningfully review magistrate judges' *voir dire* rulings, that would not change the fact that magistrate judges are subject to outside influences in ways that Article III judges are not.  As Judge Posner has explained:

"The fact that the appointing power has been given to Article III judges is the opposite of reassuring.  It makes magistrates beholden to judges as well as to Congress. . . . The Constitution built internal checks and balances into the legislative branch by making Congress bicameral and into the judicial branch by guaranteeing all federal judges—not just Supreme Court Justices, or appellate judges generally—tenure during good behavior and protection against pay cuts. Appellate judges can reverse district judges, can mandamus them, can criticize them, can remand a case to another judge, but cannot fire district judges, cow them, or silence them—cannot prevent them from making independent judgments and expressing independent views. . . . [A]s long as [district judges] enjoy the tenure and compensation protections of Article III, they are independent of [those] who appointed them . . . . Magistrates do not have those protections; the judges control their

enjoy the structural protections of Article III: They serve 8-year terms and may be removed for cause, 28 U. S. C. §§631(e), (i), and they are subject to diminution of their salaries and outright abolition of their offices by Congress. Accordingly, whatever their virtues, magistrate judges are no substitute for Article III judges in the eyes of the Constitution.

In short, if I accepted the Court's dictum that the right to a jury trial may be waived only by the defendant personally, see, *e.g.*, *Nixon*, *supra*, at 187, I would be hard pressed to conclude that waiver of the right to an Article III judge during a critical stage of a felony trial requires anything less. That said, I include this brief discussion of the constitutional issues this case presents not because I would decide them, but to point out that the Court gives them short shrift. These are serious constitutional questions, see *Roell*, 538 U. S., at 595 (THOMAS, J., dissenting), and they are posed only because of *Peretz*'s erroneous interpretation of the Federal Magistrates Act. Indeed, I suspect that Congress withheld from magistrate judges the authority to preside during felony trials precisely in order to avoid the constitutional questions *Peretz* now thrusts upon us. Again, rather than plow headlong into this constitutional thicket, the better choice is simply to overrule *Peretz*. Cf. *Peretz*, 501 U. S., at 952 (Marshall, J., dissenting) (finding the Court's resolution of difficult Article III questions "particularly unfortunate" where "the most coherent reading of the Federal Magistrates Act avoids these problems entirely").

## II

Because I conclude that *Peretz* should be overruled, and that the District Court therefore erred in delegating *voir*

---

reappointment." *Geras* v. *Lafayette Display Fixtures, Inc.*, 742 F. 2d 1037, 1053 (CA7 1984) (dissenting opinion).

*dire* to the Magistrate Judge, I must also address the Government's alternative argument that petitioner forfeited his claim by failing to object to the delegation. Petitioner's failure to object, the Government contends, means that he cannot prevail unless he satisfies the requirements of the plain-error rule. It is true that petitioner did not raise a timely objection to the District Court's delegation of *voir dire.* And petitioner cannot satisfy the plain-error rule because the statutory error below—unauthorized delegation of *voir dire* to a magistrate judge—was not "plain" under *Peretz.*

Not all uncontested errors, however, are subject to the plain-error rule. In limited circumstances, we have "agreed to correct, at least on direct review, violations of a statutory provision that embodies a strong policy concerning the proper administration of judicial business even though the defect was not raised in a timely manner." *Nguyen* v. *United States*, 539 U. S. 69, 78 (2003) (internal quotation marks omitted). In *Nguyen*, a non-Article III judge sat by designation on the Ninth Circuit panel that affirmed petitioners' convictions. Petitioners failed to object to the composition of the panel in the Ninth Circuit and raised the issue for the first time in their petitions for certiorari. Because the Ninth Circuit panel "contravened the statutory requirements set by Congress for the composition of the federal courts of appeals," *id.*, at 80, and because those requirements "embodie[d] weighty congressional policy concerning the proper organization of the federal courts," *id.*, at 79, we held that petitioners' failure to object did not preclude relief. We specifically declined to apply the plain-error rule:

"It is true, as the Government observes, that a failure to object to trial error ordinarily limits an appellate court to review for plain error. See 28 U. S. C. §2111; Fed. Rule Crim. Proc. 52(b). But to ignore the viola-

tion of the designation statute in these cases would incorrectly suggest that some action (or inaction) on petitioners' part could create authority Congress has quite carefully withheld. Even if the parties had *expressly* stipulated to the participation of a non-Article III judge in the consideration of their appeals, no matter how distinguished and well qualified the judge might be, such a stipulation would not have cured the plain defect in the composition of the panel." *Id.*, at 80–81.

I see no reason to treat this case differently than *Nguyen.* Just as "Congress' decision to preserve the Article III character of the courts of appeals [was] more than a trivial concern" in that case, *id.*, at 80, so too here Congress' decision to preserve the Article III character of felony trials "embodies weighty congressional policy concerning the proper organization of the federal courts," *id.*, at 79. Accordingly, as in *Nguyen,* the Court can and should correct the error in this case despite petitioner's failure to raise a timely objection below.

## III

For the reasons stated, I would reverse the judgment of the Court of Appeals and remand for a new trial.