**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry HAMMOND, a/k/a Larry Hoover, Defendant-Appellant.**

No. 78–5179.

United States Court of Appeals, Fifth Circuit.

Nov. 1, 1979.

Morton Berger, Spring Valley, N. Y., for defendant-appellant.

Charles O. Farrar, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

## ON PETITION FOR REHEARING

Before WISDOM, GOLDBERG and VANCE, Circuit Judges.

GOLDBERG, Circuit Judge:

In the original panel opinion in this case, we found unanimously that the government's intimidation of Hammond's witnesses violated his "constitutional right to 'present his own witnesses to establish a defense'" and that, despite his counsel's agreement to stipulate to the testimony of those witnesses, prejudice resulted. A majority of the panel determined that the conviction should be reversed, although we refused to dismiss the indictment as Ham-

mond requested.[1] *United States v. Hammond,* 598 F.2d 1008, 1012–15 (5th Cir. 1979). On petition for rehearing, the Government argues for the first time that, by his counsel's agreement to allow the stipulation to be introduced, Hammond waived any claim of prejudice resulting from the denial of his constitutional rights.

█ After a careful re-examination of the record, we do not find any such waiver. On the day after the government's actions—on the last day of the trial—Hammond's witnesses refused to testify further. The court, recessing the proceedings to its chambers, was uncertain how to deal with this grave and sudden situation and expressly indicated as much on the record. Hammond's counsel sought, without success, to have the indictment dismissed. When the court offered to grant a mistrial, Hammond's counsel refused—not because he thought there had been no prejudice to his client, but because a mistrial at that time would have been a futile gesture. He twice indicated to the court that Hammond now faced a situation where defense's main witness would testify no further because he feared retaliation by the government in unrelated proceedings pending against him in Colorado. A new trial at that time would have presented the same problems as the present trial. Finally, amid the confusion that reigned and at the urging of both the court and prosecutor, defense counsel agreed to allow the stipulation to be read to the jury.

As the Supreme Court stated in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854 (1973), "a strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial." In the landmark case of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), the Supreme Court held that before a court can find a waiver of such rights all the facts and circumstances must show their voluntary and knowing abandonment. Furthermore " 'courts indulge every reasonable presumption against waiver of fundamental constitutional rights" and " 'do not presume acquiescence in the loss of fundamental rights.' " *Id.* (footnotes omitted); *see United States v. Shea,* 508 F.2d 82, 85 (5th Cir. 1975). The right to present one's own witnesses is such a fundamental constitutional right. *Hammond, supra,* 598 F.2d at 1012 n.3. The government's argument is in effect that Hammond waived this right by his counsel's agreement to allow the use of the stipulation.

Applying these standards to the extraordinary circumstances before us, we do not believe that Hammond is barred now from claiming a new trial. The problem in his trial arose in the first instance not by any default of his own, but from the affirmative misconduct of the government through the actions of Agent Peisner. It appears to us that the alternatives posed by the court amounted to a Hobson's choice: either there would be a mistrial, after which a new trial would present the same problems as the present trial, or the trial would proceed on the basis of the stipulation. While this latter course apparently appeared to Hammond's counsel to be the lesser of the two evils, we have, as already pointed out, found it insufficient to protect Hammond's constitutional rights from the prejudice occasioned by the government's actions.[2]

---

1. Judge Vance dissented to that part of the opinion that ordered reversal of Hammond's conviction.

2. We recognize the difficulties the court below faced in trying to resolve the problems occasioned by the government's misconduct and believe it properly took an active role in coming forward with suggestions for their resolution. The Supreme Court has recognized the propriety of affirmative judicial involvement to protect a criminal defendant from such waiver of fundamental constitutional rights as is claimed to have occurred here. *See Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (waiver of right to counsel); *Cf. United States v. Garcia,* 517 F.2d 272, 277–8 (5th Cir. 1975) (waiver of conflict of interest of defense counsel). We believe, however, that here the court should have further resisted the "rush-to-justice" that produced the agreement to the stipulations which, in the particular circum-

Upon consideration of the totality of the circumstances and the controlling legal principles, we hold that Hammond's counsel's actions in agreeing to the stipulation did not waive Hammond's constitutional right.[3]

■ We do, however, amend the panel's original order in one respect. Hammond on his appeal asked only that we dismiss the indictment. This we refused to do and instead reversed the case and remanded. Upon re-consideration, we recognize that Hammond must have the option of choosing to abide by the result of the original trial rather than face jeopardy again. We therefore modify our order and remand the case to the district court to allow defendant to obtain a new trial upon application to the district court within thirty days from the issuance of our order; otherwise the judgment must be affirmed. We take this action under our supervisory power to protect the integrity of the judicial process from such highly prejudicial governmental misconduct as occurred here[4] and in recognition of the fact that now, after the passage of almost two years from the time of the original trial, the causes for the refusal of the mistrial should be removed.

We therefore remand the case to the district court upon the terms set forth above.

REMANDED.

VANCE, Circuit Judge, dissenting.

The majority's extended opinion answers one but not both of the concerns that prompted my original dissent.

The trial court committed no error. On appeal Hammond did not ask for a new trial. Our inviting him to accept an unrequested new trial is a judicial approach that I am unwilling to take. I would therefore affirm the conviction.

stances, were inherently insufficient to protect Hammond's constitutional right. *See Hammond, supra,* 598 F.2d at 1014. While we do not attempt to enumerate all the measures a trial court might take in such circumstances to protect a defendant's rights, we believe that the court might, for instance, have ordered a continuance of the trial until it could further evaluate the nature of the threat to defendant's witnesses and have then tried in some manner to secure their testimony. The excessive haste of the "resolution" achieved is reflected in the stipulation itself which was, as we noted in the panel opinion, "so poorly worded that it undoubtedly confused the jury." *Hammond, supra,* 598 F.2d at 1014 & n.5.

3. We recognize that, by refusing to accept a proffered mistrial, a criminal defendant may sometimes not be allowed to seek a new trial. *See, e. g., United States v. Merlino,* 595 F.2d 1016, 1018 (5th Cir. 1979). But in the exceptional circumstances of this case as set forth above, and where prejudice to the defendant is clearly established, we do not believe such refusal should be an absolute bar. Furthermore, Hammond did not directly seek a new trial in this appeal; rather, he sought dismissal of the indictment. As explained below, we here offer him the opportunity to take a new trial through exercise of our supervisory powers.

Our disposition of the waiver question allows us to avoid the more difficult question of whether the agreement to the stipulation, made wholly by Hammond's counsel without Hammond's participation, can be considered binding on Hammond himself. *See Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963); *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 568–9, 13 L.Ed.2d 408 (1965); *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 1248–9, 16 L.Ed.2d 314 (1966).

4. The supervisory power of the appellate courts has long been established. As the Supreme Court stated in the case generally recognized for the canonization of that power, "Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence." *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1942). *See also Thomas v. United States,* 368 F.2d 941, 946–7 (5th Cir. 1966). The supervisory power gives the appellate courts latitude to fashion remedies such as we have devised in the present case. *See United States v. Crow Dog,* 532 F.2d 1182, 1196–7 (8th Cir. 1976).