JERRY E. SMITH, Circuit Judge,
dissenting, joined by DENNIS, PRADO, GRAVES, HIGGINSON, and COSTA, Circuit Judges, in full; and joined except for footnote 2 by SOUTHWICK, Circuit Judge:
The baseball legend Yogi Berra is credited with the unintentionally humorous statement, “When you come to a fork in the road, take it.”[1] By refusing, in a terse footnote, to address the rule of orderliness, this en banc majority declines to follow Yogi’s sage advice. I respectfully dissent.[2]
The panel opinion,[3] two paragraphs long, relied on Nieto Hernandez v. Holder, 592 F.3d 681, 686 (5th Cir. 2009), which held that Section 46.04(a) of the Texas Penal Code “fits within 8 U.S.C. § 1101(a)(43)(E)(ii)’s definition of ‘aggravated felony.’ ” Castillo-Rivera “urge[d] that this holding does not foreclose his overbreadth arguments because they were not considered in Nieto Hernandez.”[4] The panel reasoned, to the contrary, that it was “bound” by the holding in Nieto Hernandez and could not address what it described as Castillo-Rivera’s “new arguments.” [5]
In his resourceful petition for rehearing en banc, the Federal Public Defender explained that “the Panel held ... that the rule of orderliness extends to issues that were not considered by a prior panel. This is consistent with some of this Court’s ... decisions ... but inconsistent with others. It is also inconsistent with the Supreme Court’s precedent about precedent.” More precisely, the Federal Public Defender framed the procedural issue this way: “[D]oes a prior opinion foreclose arguments that were waived in the prior proceeding but advanced in the current case?”
The reference to “waived” arguments stems from the fact that in Nieto Hernandez, the defendant explicitly “coneede[d] that his offense under ... § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)’s definition of ‘aggravated felony.’ ”[6] Nieto Hernandez, 592 F.3d at 686 n.6. The Federal Public Defender rightly reasoned that “Mr. Castillo-Rivera is not in privity with Mr. Nieto Hernandez, and there is no reason why he should be held to the same waiver that his predecessor selected.”[7]
*233 The court granted rehearing en banc[8] and sent the following notice:
Although the attorneys, in their briefs and oral argument, are free to address any matters raised in the case, the court is principally interested in the two issues presented in the petition for rehearing en banc, to-wit, (1) whether this court’s rule of orderliness, properly understood, should extend to issues that were not considered by a prior panel and (2) whether the crime defined in Texas Penal Code § 46.04(a) fits within the definition of “aggravated felony” in 8 U.S.C. § 1101 (a)(43) (E) (ii). In addition to the briefs of the parties, the court welcomes qualified submissions from amici curiae regarding either or both of these issues.
The parties fully addressed both questions in their en banc briefs, and the Institute for Justice submitted a brief as amicus curiae, helpfully discussing the rule of orderliness from the civil side of the docket.
The issue is therefore fully joined, but the en banc majority declines Yogi’s advice to take the fork in the road. The excuse is terse: “We do not reach this issue here, as it is not necessary to our disposition of Castillo-Rivera’s case on the merits.”
Strictly speaking, that is true. The rule of orderliness binds panels not to overrule earlier panels absent specified exceptions. Once a case is taken en banc, the court is free to overrule or modify the holdings of any panel (or, for that matter, a prior en banc decision). So any exposition by the en banc court on the rule of orderliness will always be dictum. By that bare reasoning, however, the rule of orderliness, however confusingly, erroneously, or contradictorily stated by panels past, can never be changed or its scope refined or reconciled. No panel can revisit it because of (guess what?) the rule of orderliness. And — so the argument goes — the en banc court should not do so, because it is, technically, unnecessary to the case at hand. Sort of a “Catch 22.”[9]
That logic, albeit handy in the interest of expediency, undermines the supervisory responsibility of a federal court of appeals. At the panel level, the court has supervisory authority over the district courts, the lawyers as officers of the court, and the party litigants. It follows that at the en banc level, the court, if by no other justification than necessity, must address irregularities in the rule of orderliness, as the en banc Fourth Circuit carefully explained:
The question of the binding effect of a panel opinion on subsequent panels is of utmost importance to the operation of this court and the development of the law in this circuit. Accordingly, before considering the merits of [this case], we first address this important procedural issue.
McMellon v. United States, 387 F.3d 329, 332 (4th Cir. 2004) (en banc) (footnote omitted). That is so especially where the rule is applied in a manner so extreme as to bind parties to concessions made on questions of law in unrelated cases.
This court’s supervisory power is so long- and well-established that citation is almost superfluous. A quick computer search produces myriad Fifth Circuit decisions mentioning our “supervisory authority” or “supervisory power[s].” This power includes authority over, inter alia, attor *234 neys as officers of the court and district judges who can be removed from cases for good reason.[10] It follows naturally that this en banc court has ample supervisory authority to refashion the rule of orderliness that applies to our own panels.
“The supervisory power of the appellate courts has long been established.”[11] “The variety of situations in which [the supervisory power] has been invoked defies any attempt to [define] which is at once comprehensive and accurate.... ' The sole common denominator ... is a desire to ■maintain and develop standards of fair play in the federal courts....”[12] “Through our supervisory powers, we ‘may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.’ ”[13] This can be, for example, “to protect the integrity of the judicial process.”[14]
It would be a rogue panel or district court indeed that would defy an en banc refinement of the rule of orderliness, expressed in the exercise of supervision, on the shaky ground that it is dictum. The point is that the en banc majority should have tackled the issue in the interest of justice and regularity. Its failure to do that is error.
Beyond the majority’s dereliction in abandoning the opportunity to refine this court’s process in recognizing precedent, it is significant to examine the aggressive rule that the majority blesses, albeit sub silentio. We can leave for another day a general explication of how, in an ideal world, the rule of orderliness should read. For the case at hand, we need only consider the extreme formulation that the government urges and the majority accepts: that where, as here, a party in an unrelated case has chosen, for whatever reason, to concede a point of law, and that concession is included in a final holding or judgment, the concession is binding, as a matter of law, on all courts and parties in later cases.[15]
A party can concede a legal issue for divers reasons. He could be pro se and unaware of the consequences of his concession. He could be represented by incompetent counsel. His lawyer could decide that it is better to focus the court on other perceptively more winnable issues, especially in light of the length limitations for briefs. The party might wish to avoid disclosing embarrassing facts to the judge or jury by conceding the issue to which those facts are relevant. Or a particular issue might be especially expensive or time-consuming for him to develop. The point, how *235 ever, is that he and only he should suffer the consequences — or reap the benefits— of a decision to concede a point of law, and the concession should be understood as not establishing a legal precedent beyond the preclusive effect, as law of the case or res judicata, on the parties to that proceeding in the case at hand or subsequent litigation.
The government, however, urges that we adopt the most expansive possible reading of the rule of orderliness: that a judgment that incorporates, by its silence, a legal issue that is conceded by a party— indeed, even a pro se party — will bind all future litigants in this court as though the issue had been contested, briefed, considered, and explicitly ruled on by the original panel. The reader might suggest that that overstates the government’s position. But the government stood steadfast by that articulation of the rule of orderliness in answering questions at en banc oral argument. Government counsel explained,
The court is not bound to accept the concession of a party.... Panels of the court need to have the ability and the authority to give guidance and notwithstanding the fact that a litigant conceded an issue, the court does not have to accept that concession. It can look beyond the concession and satisfy itself that the rule it is announcing is based in the law. I think that is exactly what happened here with Nieto Hernandez.
Government counsel erred. That is not at all what occurred in Nieto Hernandez. The reader will search, in vain, the briefs of Nieto Hernandez and the government for any discussion of the elements of Texas Penal Code § 46.04(a) or 18 U.S.C. § 922(g)(1).[16] It naturally follows that the Nieto Hernandez panel made no explicit holding except that “[w]e hold that state felon-in-possession offenses, such as TPC § 46.04(a), need not have an interstate commerce element in order for the offense to be an offense ‘described in’ 18 U.S.C. § 922(g)(1).” Nieto Hernandez, 592 F.3d at 684. The panel added, “We conclude, as we did in [United States v. Garza, 250 Fed. Appx. 67, 71 (5th Cir. 2007) (per curiam) ], that Nieto’s offense under TPC § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)’s definition of ‘aggravated felony.’ ” At that point, the panel appended the following footnote:
In his brief, Nieto concedes that his offense under TPC § 46.04(a) fits within 8 U.S.C. § 1101(a)(43)(E)(ii)’s definition of “aggravated felony” in every respect except for .... an interstate commerce element. TPC § 46.04(a) has two elements that are relevant to this decision: (1) prior felony conviction and (2) possession of a firearm. 18 U.S.C. § 922(g)(1) has three relevant elements: (1) prior felony conviction; (2) possession of a firearm; and (3) interstate commerce requirement. Nieto concedes in his brief that TPC § 46.04(a)’s two elements correspond with 18 U.S.C. § 922(g)(l)’s first two elements.
Nieto Hernandez, 592 F.3d at 686 n.6.
It is obvious that merely by acknowledging the defendant’s concession, the Nieto Hernandez panel did noU — in the words of government counsel quoted above — “look beyond the concession and satisfy itself that the rule it is announcing is based in the law.” Nonetheless, applying its extreme version of the rule of orderliness, the government, in its en banc brief, posits that “Nieto-Hemandez [sic] remains binding as to its holding that the substantive element of firearm possession is the same under Section 46.04 and Section 922(g)(1).”
*236 Application of the government’s rule to Nieto Hernandez undermines the sound decision of the panel not to convert his concession into a holding. The issue was neither briefed nor argued. Traditionally in our adversarial system of justice, parties raise issues and give reasons for their respective points of view; judges examine those submissions and declare the winners based on the issues that are still contested. If a party fails to raise an issue or — for whatever reason — explicitly waives it, he suffers any consequences from that choice or from his inadvertence. In these circumstances, that is to Nieto Hernandez’s detriment. The panel in his case did not decide the issue, and Castillo-Rivera should have been free to bring it and to have it decided as though no prior party had ever waived, abandoned, or failed to raise it. And that is the result that has obtained under the better understanding of this court’s rule of orderliness.
That is, until now. By declining to take the fork in the road — that is, by refusing to address and decide one of the two questions on which the court decided to rehear this case en banc — the court, in effect, installs the government’s articulation of the rule of orderliness in terms more specific and onerous than ever before, and does so without justification or explanation.
The government’s position is, at once, both smug and convenient: smug, in that the government says that the matter is not even worthy of consideration, urging that this court “should stay the course and continue to trust the systems of review currently in place.” In other words, “Move along, folks, nothing to see here.”[17] And convenient, in that the rule it brandishes is rigged to favor itself and parties in a similar position.
A rule of procedure that flatly bars parties from raising issues that were “decided” by default or inadvertence in prior, unrelated cases will almost always favor the government and disfavor the criminal defendant.[18] It is generally the defendant who raises defenses to prosecution and makes objections to enhancements and other aspects of the sentence. In an adversarial system, the defendant benefits from coming up with defenses that have never been ruled upon or new arguments that no previous defendant has ever articulated.
The government,' on the other hand, benefits from having as many arguments as possible foreclosed by precedent, waiver, or abandonment.[19] How convenient it is for the government to say that a particular theory that was never adversarily tested is nonetheless unavailable to the instant defendant because some hapless defendant conceded that issue in the recent or distant past. That approach to precedent does indeed “stay the course and continue ... the systems of review currently in place.”
*237 The question is whether the government sees its role as doing justice or winning at all cost. How is it fair to cut off resourceful attorneys from making good-faith arguments that no court has ever addressed, seriously considered, or decided? The majority does not say.
As the Institute for Justice comprehensively shows in its en banc brief as amicus curiae, this methodological flaw infects the arena of civil litigation, as well: “Parties should not be bound by the strategic decisions of past litigants to waive certain arguments. Judges should not be forced to choose between conducting enhanced, corrective en banc review versus grappling with un-briefed, unraised arguments in every opinion just to ensure that en banc correction will not be necessary.” And more: “The constitutional rights of every American will be better protected if those rights are decided squarely on a case-by-case basis, rather than being implicitly ruled upon simply because they lurked in the background of a previous case.”[20]
“The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.” NASA v. Nelson, 562 U.S. 134, 147 n.10, 131 S.Ct. 746, 178 L.Ed.2d 667 (2011) (Alito, J.). The contrary notion — that waived or abandoned issues nevertheless should be deemed “decided” and binding — should be the easiest to discard because of its abject unfairness and its irrationality as a manner of decision-making by an adversarial, common-law court. Yet the majority declines to reject or even discuss it.
Refusing to take this fork in the road is the easy way, but not the right one. I respectfully dissent.

. The saying is mistakenly attributed to Berra. See https://en.wikiquote.org/wiki/Yogi_Berra. That common misunderstanding evokes recollection of'a real "Yogiism”. See The Yogi book: I really didn't say everything I said! (Workman Publishing 1997), p. 9.

. I join and agree with Judge Dennis’s compelling dissent on the merits, which shows why the judgment of sentence should be vacated. Properly understood, Mr. Castillo-Rivera’s Texas felon-in-possession conviction is not an aggravated felony for purposes of the sentencing guidelines. I write this separate dissent to examine the consequences of the majority's failure to address the rule of orderliness.

. United States v. Castillo-Rivera, 836 F.3d 464 (5th Cir. 2016).

. Id. at 464.

. Id. at 465.

. Except for an interstate-commerce element, not relevant here.

. The en banc petition further explained,
This Court’s decisions diverge when considering arguments or issues that were never presented to or addressed by the earlier panel. Are present-day judges bound by rulings that were never made in the past? Said another *233 way, is one appellant's deliberate choice to waive certain issues binding as to all future appellants? One can find ... Fifth Circuit panel opinions answering in the affirmative and ... in the negative.

. United States v. Castillo-Rivera, 842 F.3d 862 (5th Cir. 2016) (per curiam).

. Joseph Heller, Catch 22 (Simon & Schuster 1961).

. United States v. Jefferson, 623 F.3d 227, 232 (5th Cir. 2010) (Clement, J.) (“[T]he United States Attorney remains subject to this court’s general supervisory powers [over] frivolous ... appeals.”); Gomez v. St. Jude Med. Daig Div. Inc., 442 F.3d 919, 938 (5th Cir. 2006) (supervisory power to remove district judge from a case).

. United States v. Hammond, 605 F.2d 862, 864 n.4 (5th Cir. 1979) (Goldberg, J.) (on petition for rehearing).

. Note, the Judge-Made Supervisory Power of the Federal Courts, 53 Geo. L.J. 1050, 1050 (1965).

. United States v. Williams, 20 F.3d 125, 128 (5th Cir. 1994) (Goldberg, J.) (quoting United States v. Hasting, 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)).

. Hammond, 605 F.2d at 864.

. The same logic applies to the less obvious situation in which, in the prior case, an alternate theory or claim, although not explicitly abandoned or conceded, is never raised or even mentioned. The question there, as here, is whether a judgment denying relief on the claim that is addressed precludes, via the rule of orderliness, a later, unrelated party from making the additional claim that the first court never confronted.

. Except for the interstate-commerce element of the latter.

. "An ironic or sarcastic phrase uttered by a person who feels that he/she has detected a hidden, usually unpleasant or sinister, deeper meaning of a story ... [that he/she] wishes to conceal possibly to avoid upsetting the general public.” http://www.urbandictionary.com/ define.php?term=nothing% 20to% 20see% 20here.

. The same disadvantage accrues to a civil plaintiff who wishes to advance claims that an unrelated plaintiff, in a previous case, conceded or otherwise failed to advance. I address the civil side of the docket below.

.In its opposition to Castillo-Rivera’s petition for rehearing en banc, the government summarizes its rule as this: "Arguments considered or not considered in the prior panel’s resolution of the issue are irrelevant to a future panel because the issue has been decided.” In its amicus brief, the Institute for Justice appropriately calls the government’s rule "the sweeping precedent rule.”

. And more still:
To be sure, litigants are bound by the holdings of courts in cases to which they were not parties. But that is a far cry from saying litigants can be bound by the tactical choices of individual parties with whom they are not in privity. A party can waive an argument for any number of reasons, from tactical considerations to ideological preferences to simple incompetence. To impose that decision on a party with a different view of tactics or ideology (or a different level of competence) deprives that party of important due-process rights.